STATE OF NORTH CAROLINA v. CALVIN CHAVIS BAKER

No. 74A84

(Filed 2 October 1984)

1. **Criminal Law §§ 75.2, 75.15— confession—defendant not affected by threat—not intoxicated at time of statement**

There was evidence to support findings and conclusions that defendant was not threatened or intoxicated and that his pretrial confession was voluntary where a detective was unable to recall at the voir dire hearing a threatening statement made to defendant, but remembered it at trial; the threatening statement was made around 11:00 p.m. after an interview with defendant had been terminated by his request for an attorney; the detective testified that defendant did not react to the threatening statement or appear to be afraid; defendant did not waive his rights and subsequently make statements until 2:20 p.m. the next day; and the detectives and defendant testified that defendant was not intoxicated on the day he made his statements, although he may have been drinking and smoking marijuana on the day of the crime and of his arrest.

2. **Criminal Law §§ 75.4, 75.15; Constitutional Law § 49— waiver of right to counsel—insufficient evidence of intoxication—questioning after request for an attorney**

The defendant knowingly, voluntarily and intelligently waived his constitutional right to counsel where the evidence indicated that defendant was not intoxicated when he waived his rights, although he had consumed a beer and marijuana the day before, and where the defendant informed detectives on his own and without prompting that he wished to talk about the crime after he had previously refused to talk and requested an attorney. Police may question an accused who has invoked his right to silence and to counsel if the accused himself initiates further communication with the police concerning the crime.

3. **Criminal Law § 181.2— post-conviction hearing—motion for appropriate relief—sufficiency of the evidence to support findings**

   The trial court properly denied a motion for appropriate relief based on a detective's failure to recall at voir dire a threatening statement made to defendant and his recollection of that statement at trial, because the evidence supported the court's finding that defendant had not been threatened during the interview and had not expressed fear or mentioned any statement made by the detective the previous evening. Findings of fact made by a court in its order granting or denying a motion for appropriate relief are binding on appeal if supported by evidence in the record, even if the evidence is conflicting.

4. **Criminal Law § 15.1; Jury § 2.1— motion to change venue or for a new venire—insufficient prejudice from newspaper articles**

   There was no error in denying a defendant's motions for a change of venue or a change in the venire where the newspaper articles cited by defendant were factual, non-inflammatory reports of events; prospective jurors who said that the newspaper accounts would influence their judgment were excused; there had been no difficulty in selecting the jury; the defense had not exhausted its peremptory challenges; there was no evidence that papers read by jurors in the jury room contained articles relating to the crime or the trial; and the two jurors who said they had read newspaper articles in the jury room specifically denied having read any articles about the case. The trial judge was not required to ask the jurors whether they had discussed any outside accounts or information about the case when the defendant did not request such an inquiry.

5. **Criminal Law § 5— mental capacity of defendant to proceed—fear of reprisal insufficient to show incompetency**

   The court did not err in denying defendant's motions to stop the trial, strike his testimony due to mental incapacity, and for a mistrial, where defendant's testimony on direct examination implicated him in the crimes charged against him; a certified forensic screening examiner testified that defendant was competent; defendant's father testified that defendant had changed and become nervous while in jail before trial and was irrational and did not know what he was doing; a bailiff testified that defendant had not been hostile, irrational, or violent; defendant's attorney stated that defendant had completely changed the story he had consistently told before trial; and there was evidence that defendant was afraid that a man still at large and also charged in the crime would retaliate against his family.

6. **Criminal Law § 86.4— impeachment of defendant—juvenile petitions**

   There was no prejudicial error in a prosecutor asking questions from juvenile petitions on cross-examination where defendant had been found delinquent in the proceedings arising from the petitions; the prosecutor was acting in good faith; and the witness was either evasive or confused.

APPEAL by defendant from the judgment entered by *Long, Judge,* at the 26 September 1983 Criminal Session of FORSYTH

County Superior Court, and from a ruling by *Wood, Judge,* on 5 August 1983, denying defendant's motion to suppress.

Defendant, Calvin Chavis Baker, was charged with first degree rape, felonious larceny of an automobile, felonious breaking or entering and felonious larceny.

The State's evidence tended to show that in the late afternoon of 27 June 1983, two young black males came to the residence of Mr. and Mrs. P. in Winston-Salem. When Mr. P. came to the door, he was knocked to the floor by one of the black males and struck in the throat with a metal rod by the other. He was then bound hand and foot and placed on a bed in the front bedroom of the residence. One of the assailants found Mrs. P. asleep in another room, bound her, and forced her into a back bedroom. There, he threatened her with a metal rod and raped her. The other assailant then entered the bedroom, threatened Mrs. P. with a pistol, and raped her. Mr. and Mrs. P. were then forced into a bathroom and bound. The assailants ransacked the residence, removed a number of articles of personal property, and placed them in the victims' automobile. The assailants then drove away in the automobile.

Mr. P. freed himself from his bonds, freed his wife, and called the police. A police broadcast describing the automobile was heard by C. S. Poteat, a private investigator. Shortly afterward, Mr. Poteat saw the described vehicle occupied by two black males, one of whom he subsequently identified as the defendant. Mr. Poteat followed the automobile and notified the police over a telephone in his vehicle. After a high-speed chase, the occupants of the victims' automobile abandoned it near a public school and fled on foot. The defendant was apprehended and arrested a few minutes later near the scene by a police officer.

On the day after his arrest, defendant executed a waiver of his constitutional rights and agreed to answer questions. He then made written and oral statements in which he admitted helping Tommy Covington with the robbery. He also stated that he had seen Covington rape Mrs. P. but did not admit that he had raped her. Subsequently defendant moved to suppress these statements on the grounds that they were involuntary and were taken in violation of his constitutional rights.

Defendant testified at trial and at one point began to admit all of the crimes charged against him, as well as crimes with which he was not charged. Defendant objected to this testimony on the grounds that he was not competent and did not understand what he was doing. After a hearing the court concluded that defendant was competent and allowed the trial to proceed. Subsequent to his conviction and sentencing the defendant moved to have his conviction set aside based on new evidence of threats made to him prior to trial and because some jurors had access to newspapers during the trial. The motions were denied.

*Rufus L. Edmisten, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the State.*

*Zachary T. Bynum, III, for defendant-appellant.*

COPELAND, Justice.

Defendant has excepted to the denial of his motion to suppress his pretrial statement, motion for a change of venue or venire, motion for mistrial and motion to strike his testimony, and motions for appropriate relief. However, defendant did not object at trial to the rulings on his motions or to the findings of fact and conclusions of law on which the rulings were based. Defendant also failed to file objections to the findings of fact and conclusions of law which were the basis of the trial court's denial of his motions for appropriate relief. Exceptions must be properly preserved for review "by action of counsel taken during the course of the proceedings in the trial tribunal by objection noted" unless by rule or law such exception is deemed to be preserved or taken without objection. N.C. R. App. P. 10(b)(1). If no exceptions are taken to findings of fact, "such findings are presumed to be supported by competent evidence and are binding on appeal." *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590 (1962). Defendant has not properly preserved his exceptions pursuant to Rule 10(b)(1) and so they cannot properly be the basis for his assignments of error. N.C. R. App. P. 10(a). However, in the interest of justice we will review defendant's assignments of error based on these exceptions as well as those based on properly preserved exceptions.

I.

[1] Defendant assigns as error the failure of Judge Wood and Judge Long to suppress the written and oral statements made by

State v. Baker

him to the police prior to trial. Defendant contends that at the time he made the statements he was physically threatened and intoxicated so that the statements and his waiver of the right to counsel were involuntary.

Defendant contends that he was coerced into confessing by a statement of Detective Reavis to the effect that defendant "needed the hell kicked out of him." Detective Jones recalled this statement at trial but had been unable to remember it at the *voir dire* hearing. Detective Reavis testified at the *voir dire* hearing that he did not recall making the statement. Detective Reavis interviewed the defendant between 10:30 and 11:00 p.m. on 27 June 1983. The interview was held so that the defendant could fill out a personal history sheet and be advised of his constitutional rights. The statement of which the defendant complains was made after the interview had been terminated by the defendant's request for an attorney. Defendant did not execute a waiver of his constitutional rights until the next day at 2:20 p.m. and his oral and written statements were made som time later.

The defendant makes much of the fact that Judge Long did not have before him a transcript of the *voir dire* hearing conducted by Judge Wood when he ruled on the admissibility of defendant's statements at trial. Defendant argues that Judge Long relied on the decision made by Judge Wood in the *voir dire* hearing even though the detectives testified in that hearing that Detective Reavis made no statement about the defendant needing to have "the hell kicked out of him." The trial transcript and record indicate the opposite. Judge Long was made aware that the statement attributed to Detective Reavis had not been admitted by the officers at the *voir dire* hearing when he ruled defendant's statements to be admissible. While Judge Long did not make detailed findings at the *voir dire* hearing held during the trial, he did consider the testimony of Detective Jones that the defendant did not react to Detective Reavis' statement or appear to be afraid. Judge Long then denied defendant's motion to suppress his statements.

The defendant also argues that his statements were involuntary because he was acting under the influence of intoxicants when he made them. We find no support in the record for this argument. While the defendant may have been drinking beer and

smoking marijuana on the day of the crime and of his arrest (27 June 1983), the detectives testified that he was not intoxicated on the night of his arrest nor on the following day when he made his statements. Defendant himself testified that he was not intoxicated on June 28, the day the statements were made. Judge Wood, in denying defendant's pretrial motion to suppress his statement, and Judge Long, in denying defendant's motion for appropriate relief, both weighed the conflicting testimony and concluded that the defendant was not intoxicated when he made his statement on 28 June 1983.

Based on their findings that defendant had not been intoxicated or threatened, both judges concluded that defendant's statements were voluntarily made. While Judge Wood did not hear Detective Jones' testimony concerning the statement made by Detective Reavis there was sufficient evidence before him to support his finding. Findings by the court that no threats or promises were made to the defendant to induce him to make a statement are proper findings of fact. *State v. Jackson*, 308 N.C. 549, 578, 304 S.E. 2d 134, 150 (1983). Findings of fact made by the trial judge following a *voir dire* hearing on the voluntariness of a defendant's confession are conclusive on appeal if supported by competent evidence in the record. *Id.* at 569, 304 S.E. 2d at 145; *State v. Oxendine*, 305 N.C. 126, 135, 286 S.E. 2d 546, 551 (1982); *State v. Rook*, 304 N.C. 201, 212, 283 S.E. 2d 732, 740 (1981). The findings of Judges Wood and Long that the defendant was not threatened or intoxicated are supported by competent and material evidence and are binding on this Court. Their conclusions that defendant's confession was voluntary are supported by the findings.

[2] Defendant also contends that his waiver of the right to counsel was not knowingly and intelligently made. We disagree. The defendant argues that he was intoxicated when he waived his rights and made his statement because of the beer and marijuana he had consumed on the day of the crime. But, as previously mentioned, the evidence indicates that defendant was not intoxicated when he waived his rights. Whether a waiver of constitutional rights has been knowingly and intelligently made is to be determined from the totality of the circumstances. *State v. Steptoe*, 296 N.C. 711, 716, 252 S.E. 2d at 711 (1979). Judge Wood concluded that defendant was not intoxicated when he waived his

rights on 28 June 1983 and that his waiver was knowingly and voluntarily made. His findings are supported by competent and material evidence.

The fact that on the night of his arrest defendant had refused to talk and requested an attorney does not prevent his statement from being voluntary. Defendant on his own and without prompting from the detectives informed them that he wished to talk about the crime. Police may question an accused who has invoked his right to silence and to counsel if the accused himself initiates further communication with the police concerning the crime. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). That is exactly what defendant did here. We hold that in the totality of the circumstances defendant's waiver of his constitutional rights was knowingly, voluntarily, and intelligently made.

## II.

[3] In his brief defendant argues that the trial court erred in denying his motion for appropriate relief based on the changed testimony of Detective Jones. We find no error and affirm the ruling of the trial court.

In denying defendant's motion for appropriate relief Judge Long found as a fact that "[d]uring the interview Officer Reavis did not threaten the defendant in any way and the defendant did not express any fear and did not mention any statement made by the detective on the previous evening." Findings that no threats or promises were made to the defendant is a proper finding of fact. *Jackson*, at 578, 304 S.E. 2d at 150. Findings of fact made by a court in its order granting or denying a motion for appropriate relief are binding on appeal if supported by evidence in the record. *State v. Bush*, 307 N.C. 152, 168, 297 S.E. 2d 563, 573 (1982); *State v. Stevens*, 305 N.C. 712, 719-20, 291 S.E. 2d 585, 591 (1982). This test is applicable even if the evidence is conflicting. *Stevens*, at 720, 291 S.E. 2d at 591. There is abundant evidence in the record to support Judge Long's findings, and they in turn support his conclusion that defendant's confession was voluntary.

## III.

[4] We next turn to defendant's contention that the trial court erred in denying his motions for change of venue or change of venire. Defendant argues that pretrial publicity was so extensive

and of such an inflammatory nature that he could not obtain a fair trial. In support defendant refers to numerous newspaper articles written about the crime and contends that this publicity was more inflammatory and widespread in the county of prosecution. Defendant contends that denial of his motion was clearly prejudicial in light of the fact that jurors had access to newspapers before the trial and in the jury room during deliberations. We hold that the trial court properly exercised its discretion and that defendant was not prejudiced.

A trial court must grant a change of venue or order a special venire "[i]f, upon motion of the defendant, the court determines that there exists in the county in which prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, . . ." N.C. Gen. Stat. § 15A-957 (1983). A motion for a change of venue, or a change of venire, is addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of an abuse of discretion. *State v. Jerrett*, 309 N.C. 239, 250, 307 S.E. 2d 339, 345 (1983). *State v. Oliver*, 302 N.C. 28, 37, 274 S.E. 2d 183, 189 (1981). The burden is on defendant to show that the prejudice against him is so great that he cannot obtain a fair and impartial trial. *State v. Boykin*, 291 N.C. 264, 269, 229 S.E. 2d 914, 917-18 (1976). If the defendant shows that there is a reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion if the trial court fails to grant a change of venue or a special venire panel. *Id.* at 270, 229 S.E. 2d at 918.

After examining the newspaper articles submitted by the defendant we find that they are factual, non-inflammatory, reports of events. Such general factual coverage of a crime is not innately prejudicial. *State v. Matthews*, 295 N.C. 265, 279, 245 S.E. 2d 727, 736 (1978), *cert. denied*, 439 U.S. 1128 (1979). The record indicates that prospective jurors who said that the newspaper accounts would influence their judgment were excused. In denying defendant's motion the trial judge noted that there had been no difficulty in selecting the jury and that the defense had not exhausted its peremptory challenges. We see nothing in this that demonstrates that defendant was prejudiced.

However, defendant argues that events during the trial show that he was prejudiced by the court's failure to grant a change of

State v. Baker

venue. Specifically, he argues he was prejudiced because the jury had access to newspapers while in the jury room. While this is true there is no evidence that any of the papers read by the jurors contained articles relating to the crime or the trial. After this was brought to his attention the trial judge questioned the jury, and none of the jurors indicated that they had read any articles pertaining to the trial. The two jurors who said they had read newspapers in the jury room specifically denied having read any articles about the case. This evidence is insufficient to show that the defendant was prejudiced.

In arguing that the trial court erred in denying his motion for appropriate relief the defendant contends that the two jurors who read newspapers in the jury room must have read the headlines or the opening paragraphs of articles about the case before they could know that the articles concerned the case and that they were forbidden to read them. Defendant then contends that the trial judge erred by not asking the jurors if they had discussed the newspaper accounts of the case because word of mouth recounting of the information contained in headlines or articles would prejudice the defendant. We find these arguments to be without merit.

It is pure speculation to suggest that the newspapers read by the jurors contained articles about the case or that the jurors discussed such articles among themselves. The trial transcript does not reveal what papers were read by the jurors so this Court has no way of knowing that such papers contained any articles about defendant's case. What evidence there is suggests that the papers did not contain any such articles because all of the jurors indicated that they had read no newspaper articles concerning the case. While the trial judge might have done better to nail down this issue by asking the jurors whether they had discussed any outside accounts or information about the case, his failure to do so was not prejudicial to the defendant. Defendant did not request that the court question the jury about any such discussions, and we hold that it was not error for the trial judge to fail to ask such questions on his own motion.

Based on our review of the transcript we conclude that defendant has failed to show that he was prejudiced by publicity about the case or denied a fair and impartial trial. Therefore, we

hold that the trial court did not err in denying defendant's motions for a change of venue or a change in the venire. For the same reasons we hold that the court correctly denied defendant's motion for appropriate relief.

## IV.

[5]   Defendant contends that the trial court erred in its denial of his motions to stop the trial, strike his testimony due to his mental incapacity, and for mistrial. We disagree.

N.C. Gen. Stat. § 15A-1001(a) (1983) provides that

(n)o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

The defendant bears the burden of persuasion on a motion under this section. *State v. Jacobs*, 51 N.C. App. 324, 276 S.E. 2d 482 (1981). The court's findings of fact as to defendant's mental capacity are conclusive on appeal if supported by the evidence. *State v. McCoy*, 303 N.C. 1, 18, 277 S.E. 2d 515, 528 (1981); *State v. Taylor*, 290 N.C. 220, 226 S.E. 2d 23 (1976).

Defendant took the stand in his own defense and on direct examination the following exchange took place:

Q. Mr. Baker, we've heard a lot of evidence here today. On this night, June 27th, all of this is alleged to have occurred, would you tell us what happened in your own words that day.

A. Okay. Well, Mr. Covington came over my house that morning and talking about he wanted to shoot some ball, and shot some ball. Got through, went to got some beer. After that he say he know where to make some money at. So he told me, you know, what the deal was, and so I said okay. Then when we got there—

Q. What do you mean what the deal was?

A. You know, he thought nobody wasn't going to be home anything like that. And so after that, he open a door and so he went over there and knocked on the door and this old man

came to the door. And then I pushed Mr. Covington aside and then I hit the old man. Then I started cutting him.

Cut him on the wrist. And then after that, I started hitting on Mr. Covington with a iron bolt and knocked him out. Tied this old man up and to the bedroom.

Seen a lady and tied her up. Start screaming. After that, I started searching the house.

Q. What you mean started cutting them up?

Cut their wrist. I just started cutting.

THE COURT: Are you saying you cut a wrist?

THE WITNESS: Yeah.

Doing it for y'all. That's what they wanted anyway.

And so I tied Mr. Covington up and told them tied up. Then I wanted to tie both of them up. I did everything. And then started raping her about nine or ten times the whole day.

MR. BYNUM: Your Honor, I'm going to object to this—

MR. COLE: Let him talk. I object. Let him talk.

A. After that, I got all the property dumped out in the floor and left—

THE COURT: Just one moment. What is the objection?

MR. BYNUM: Perhaps this better be heard on voir dire. I'm not sure, Your Honor.

MR. COLE: Your Honor, I hate to interrupt the defendant's testimony. The jury has a right to hear the testimony. He wants to tell his story. Let him tell his story.

MR. BYNUM: Your Honor, he has unbeknownst to counsel changed everything he told me at this time.

On motion of defendant's counsel the court ordered defendant to be examined by Bryan Brown, a certified forensic screening examiner. The court then held a *voir dire* hearing on defendant's competency to stand trial. Mr. Brown was tendered by defendant as an expert witness and testified that he had examined defend-

ant sometime before the trial and that at the time of his first examination it was his opinion that defendant was competent and able to proceed to trial. He also testified that he had examined defendant again on the day of the *voir dire* hearing. Mr. Brown testified that defendant was aware of the charges against him, but in his opinion defendant consciously decided not to talk about the events occurring on the day of the crime. The court also heard testimony from defendant's father that defendant had changed and become nervous during his confinement in jail prior to trial, and that it was his opinion that defendant was irrational and did not know what was going on when he testified. The bailiff testified that defendant had not exhibited hostile, irrational or violent behavior but that he looked away, turned his back, or commented when he disagreed with testimony or rulings by the court. Mr. Bynum, defendant's counsel, informed the court that defendant had completely changed the story he had consistently told him in preparation for trial. He noted that at the pretrial *voir dire* hearing defendant had adhered to his original story. Mr. Bynum also told the court that defendant was not assisting him in conducting the defense. There was also evidence that defendant took full responsibility for the crime out of fear that Tommy Covington, who was still at large and also charged in the crime, would retaliate against defendant's family if defendant implicated him in the crime.

After hearing the evidence the court concluded that defendant was capable of understanding the nature and object of the proceedings, that he was able to comprehend his situation, and assist in his own defense in a reasonable and rational manner. Based on these findings the court held that defendant's testimony was not motivated by any of the traditional reasons which would make him incompetent to proceed. While defendant's conduct was unusual, to say the least, there was much evidence that he was competent, and we hold that he has not met his burden of persuasion. Defendant may have testified as he did due to a fear of Tommy Covington, but that does not demonstrate that he was incompetent. The court's findings are supported by the evidence and so are binding on appeal.

## V.

[6]  Defendant's final 'assignment of error that was briefed and argued concerns the prosecutor's use of defendant's juvenile

record to impeach his credibility. Because this case was tried before 1 July 1984, the rules of the new Evidence Code will not be addressed.

In any criminal or delinquency proceeding a juvenile who testifies, either as the defendant or a witness, may be ordered to testify as to whether he has been adjudicated delinquent. N.C. Gen. Stat. § 7A-677(b) (1981). This is in line with the general rule that a defendant who takes the stand may be cross examined for impeachment purposes about prior convictions. *State v. Lynch,* 300 N.C. 534, 543, 268 S.E. 2d 161, 166 (1980). Defendant contends that the prosecutor in this case went beyond these well established rules by reading directly from the juvenile petitions while questioning defendant and by characterizing the petitions as felonious. Defendant argues that by this method of questioning the prosecutor improperly characterized the adjudications of delinquency and in effect improperly offered evidence of such adjudications.

Defendant correctly points out that a prosecutor may not in cross examining a defendant on collateral crimes use questions which assume as facts unproved insinuations of the defendant's guilt of collateral offenses. *State v. Phillips,* 240 N.C. 516, 524, 82 S.E. 2d 762, 767 (1954). However, defendant's argument that the prosecutor violated this rule is clearly erroneous. The prosecutor based his questions concerning defendant's prior convictions on juvenile petitions from proceedings in which defendant had been found to be delinquent. Clearly, the prosecutor was not making insinuations of unproven facts as was the case in *Phillips.*

"When a cross-examiner seeks to discredit a witness by showing prior inconsistent statements or other conduct, the answers of the witness to questions concerning collateral matter are generally conclusive and may not be contradicted by extrinsic testimony." *State v. Cutshall,* 278 N.C. 334, 349, 180 S.E. 2d 745, 754 (1971). Defendant contends that the prosecutor's tactic of reading from defendant's juvenile petitions while cross examining defendant in effect put those petitions into evidence to contradict defendant's denials. Such conduct by the prosecutor is not to be commended, but we hold that it does not constitute prejudicial error. When a prosecutor is acting on a good faith belief in the reliability of his information, as was clearly the case here, he may

press or "sift" the witness by further cross examination when the witness denies that he committed the crimes or bad acts that are the subject of the cross examination. *State v. Fountain,* 282 N.C. 58, 68-69, 191 S.E. 2d 674, 682 (1972). This is particularly true where the witness is either evasive or confused, as appears to be the case here. In the past we have found that it was not reversible error for the prosecutor to question a defendant about his signature on a purported transcript of his guilty plea to a collateral crime, *id.,* and we now hold that the prosecutor's questions from defendant's juvenile petitions do not constitute prejudicial error.

We do not discuss defendant's remaining assignments of error since they were neither briefed nor argued and are deemed abandoned. *See* N.C. R. App. P. 28(a). After a careful review of the record we find no error.

No error.