STATE v. FLOWERS

[121 N.C. App. 299 (1996)]

STATE OF NORTH CAROLINA v. DEBORAH SUZANNE FLOWERS

No. COA94-993

(Filed 2 January 1996)

## 1. Evidence and Witnesses § 1298 (NCI4th)— second-degree murder—confession—waiver of rights—emotional condition of defendant

The trial court did not err in a second-degree murder prosecution by admitting defendant's inculpatory statements where defendant argued that she was impaired by an allergic reaction to prescription narcotics and by post-traumatic stress disorder so as to render any responses to police interrogation unknowing and involuntary. The trial court found that defendant was not hysterical, was not crying but was upset during the period prior to questioning and that defendant's tape-recorded statements were demonstrative of a person answering questions thoughtfully and responsively. Defendant's claim of incapacity is simply not borne out by the trial court's findings or the record.

**Am Jur 2d, Trial § 1357.**

**Sufficiency of showing that voluntariness of confession or admission was affected by alcohol or other drugs. 25 ALR4th 419.**

**Validity or admissibility, under Federal Constitution, of accused's pretrial confession as affected by accused's mental illness or impairment at time of confession—Supreme Court cases. 93 L. Ed. 2d 1078.**

## 2. Evidence and Witnesses § 1268 (NCI4th)— second-degree murder—confession—subsequent waiver not obtained

*Miranda* warnings given to a murder defendant retained vitality where defendant was advised of her rights prior to any custodial interrogation; she signed a waiver of those rights in close temporal proximity to the actual explanation of the warnings; the record shows that the initial warnings, and defendant's signing of the waiver, took place over a period of approximately eight minutes, from 7:31 p.m. to 7:38 p.m.; the taped questioning, and defendant's statement arising therefrom, began at 8:30 p.m.; defendant was presented the next morning with a transcription of

her recorded statement, which explicitly referred to her *Miranda* rights; and defendant acknowledged the transcript.

**Am Jur 2d, Trial § 1357.**

**Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.**

3. **Evidence and Witnesses §§ 2292, 2152 (NCI4th)— confession—mental capacity to waive rights—expert psychiatric testimony excluded—no error**

The trial court did not err in a murder prosecution by refusing to allow defendant's expert psychiatric witness to testify on the substantive issue of defendant's capacity to waive her constitutional rights under *Miranda* based on claims of PTSD and drug impairment where the court allowed the testimony only to the extent necessary to corroborate defendant's testimony. Under *State v. Daniels*, 337 N.C. 263, a witness may not testify as to whether the defendant had the capacity to waive *Miranda* rights.

**Am Jur 2d, Expert and Opinion Evidence §§ 6, 41.**

**Sufficiency of showing that voluntariness of confession or admission was affected by alcohol or other drugs. 25 ALR4th 419.**

Appeal by defendant from judgment entered 6 July 1993 by Judge Beverly T. Beal in Cleveland County Superior Court. Heard in the Court of Appeals 16 October 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General John F. Maddrey, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellant Defender J. Michael Smith, for defendant appellant.*

SMITH, Judge.

Defendant appeals her conviction for second degree murder on two grounds. First, defendant argues the trial court erred in its denial of a motion to suppress, based on an alleged wrongful police interrogation. Second, defendant assigns error to the trial court's decision to limit the scope of testimony by defendant's expert witness. We find no error, and affirm defendant's conviction.

STATE v. FLOWERS

[121 N.C. App. 299 (1996)]

Evidence presented at the suppression hearing tended to show the following facts. On 21 February 1991, police officers responded to a phone call reporting a shooting at the home of defendant and her husband, Forrest Flowers. Upon arrival at defendant's residence, Cleveland County Detective Jerry L. White observed defendant standing in the yard. Detective White entered the house and observed Forrest Flowers dead on the floor. Detective White also observed a hole in decedent's chest, and a shotgun in the bedroom of the house. Detective White surmised the hole must have come from a large caliber weapon or shotgun blast.

Detective White then returned to the yard and spoke with defendant. Defendant told Detective White that she had been loading a shotgun across the room from decedent when an accidental discharge occurred. This discharge struck decedent, killing him. Defendant's demeanor at the time of this investigatory inquiry is a matter of dispute. Detective White described defendant's emotional state as "upset," or "somewhat upset," but not "hysterical or in tears." Other witnesses at the scene of the shooting observed the defendant as upset, but rational.

Defendant was then transported to the Cleveland County Law Enforcement Center by Detective White. Once at the station, defendant was apprised of her *Miranda* rights. As defendant was read these rights, Detective White repeatedly paused and asked whether she understood those rights. Defendant responded by stating she understood her rights. Defendant then waived those rights and signed a written waiver. The waiver included the following statement:

> I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promise or threats have been made to me . . . .

The waiver was signed by defendant at 7:38 P.M. on 21 February 1991, and was witnessed by Detective Brian Hawkins.

After the waiver was signed and acknowledged, Detective White began questioning defendant. Shortly thereafter, Detective Raymond Hamrick arrived. With Detective Hamrick present, Detective White resumed the questioning of defendant. Detective White questioned the veracity of defendant's version of events surrounding the shooting. Specifically, Detective White found defendant's accidental discharge story inconsistent with the nature of the shotgun wound

inflicted upon the decedent. Given the relatively small size of the entry wound, Detective White concluded the shotgun's discharge must have come from close range, not across the room as defendant claimed at the shooting scene.

Defendant was asked by Detective White to explain this apparent anomaly, stating it "could not have happened the way you told me that it happened." In response to Detective White's question, and in the presence of Detective Hamrick, defendant retorted, "Well, okay, I shot him." At this point, Detective White asked defendant if she would recapitulate her admission while being tape-recorded. Defendant agreed.

Defendant then repeated her story to Detective White while being tape-recorded. The tape recording took place at 8:30 p.m., 21 February 1991, and was witnessed by Detective Hamrick. In the transcript of the tape, the defendant affirms she was "advised of [her] constitutional rights" prior to making the recorded statement.

Defendant's recorded statement elaborated upon her earlier admission of culpability. In her recorded statement, defendant admits shooting the decedent because she "had had all she could take." Further, defendant explains how she selected a red shell, loaded the shell into the breech of the shotgun, and shot decedent from a distance of approximately two feet, while he was asleep on the couch. Defendant described the shooting as "a way out," apparently meaning a way out of the marriage.

The next morning, 22 February 1991, at 10:02 A.M., defendant read and signed a transcript of her recorded statement, affirming the transcript to be her "entire statement."

At trial, the defense theory was premised upon defendant's purported inability to form the capacity necessary to knowingly and voluntarily waive her constitutional rights prior to interrogation. The evidence offered by defendant to support a defense based on incapacity centered on expert psychiatric testimony. The ostensible reason for the psychiatric testimony was to show that defendant "was impaired by an allergic reaction to prescription narcotics and post-traumatic stress disorder (PTSD) so as to render any responses to police interrogation unknowing and involuntary." The State objected to the use of psychiatric testimony as substantive evidence of defendant's lack of capacity, and the trial court sustained the objection. In ruling on

the objection, the trial court allowed defendant's use of psychiatric testimony only for the limited purpose of corroboration.

We note preemptively that defendant has not set out all of her assignments of error in her brief on appeal. As such, those assignments of error are deemed abandoned. *State v. Ledford*, 41 N.C. App. 213, 218, 254 S.E.2d 780, 782 (1979); N.C.R. App. P. 28(b)(5) (1995). Defendant's remaining assignments of error address the trial court's failure to suppress defendant's inculpatory statements, and the trial court's limitations on defendant's expert psychiatric testimony.

[1] Defendant maintains the trial court improperly allowed admission of her inculpatory statements, in derogation of the rules set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694 (1966). The purpose of *the Miranda* holding is to ensure "the use of procedural safeguards effective to secure the [constitutional] privilege against self-incrimination." *Id.* at 443, 16 L.Ed.2d at 706. Accordingly, defendant attempted to suppress her inculpatory statements, but that motion was denied by the trial court.

Defendant's *Miranda*-based theory is twofold. Defendant argues "she was impaired by an allergic reaction to prescription narcotics and post-traumatic stress disorder (PTSD) so as to render any responses to police interrogation unknowing and involuntary." Otherwise stated, defendant asserts she lacked capacity to waive her *Miranda* protections. Next, defendant argues *Miranda* warnings should have been given at each stage of the interrogation process, not just at the initial period of questioning. Because repeated warnings were not given, defendant asserts the original *Miranda* warnings became stale at the point the tape-recorded statement was made.

Appellate courts reviewing the voluntariness of a confession must apply a totality of the circumstances test. *State v. Smith*, 328 N.C. 99, 114, 400 S.E.2d 712, 720 (1991). Application of this totality test is based upon scrutiny of the " 'findings of fact made by the trial judge following a *voir dire* hearing on the voluntariness of a defendant's confession [which are] conclusive on appeal if supported by competent evidence in the record.' " *State v. Richardson*, 316 N.C. 594, 598-99, 342 S.E.2d 823, 827 (1986) (quoting *State v. Baker*, 312 N.C. 34, 39, 320 S.E.2d 670, 674 (1984)). Conclusions of law flowing from the trial court's findings are a proper matter for review. *Smith*, 328 N.C. at 114, 400 S.E.2d at 720.

In the instant case, the trial judge's order denying defendant's motion to suppress is replete with findings supported by competent evidence. Those findings justify a legal conclusion that defendant's inculpatory statements were voluntary. Defendant's arguments that she lacked capacity are belied by her actions indicative of rationality. For instance, the trial court found that "defendant was not hysterical, was not crying but was upset" during the period prior to questioning. Further, the trial court found defendant's tape-recorded statements demonstrative of a person answering questions "in a clear manner generally, thoughtfully, responsively generally." Defendant's claim of incapacity, based on PTSD or an allergic reaction to drugs, is simply not borne out by the trial court's findings or the record. Based on the enumerated examples herein, and others extant in the trial court's findings, there was "plenary competent evidence" to support the conclusion that the confession was voluntary. *State v. Corley*, 310 N.C. 40, 52, 311 S.E.2d 540, 547 (1984). Defendant's signed waiver of her rights was therefore in accord with *Miranda*.

[2] Defendant's claim that the initial *Miranda* warnings were inadequate, or stale, with regard to defendant's recorded statement (and the signing of the transcript therefrom) is ill-founded. The test for staleness is whether the *Miranda* warnings initially given were adequate to ensure defendant's awareness of her rights during subsequent interrogations. *Smith*, 328 N.C. at 113, 400 S.E.2d at 719. A determination of adequacy is made by considering the totality of the circumstances. *Id.*

The record discloses that defendant was advised of her *Miranda* rights prior to any custodial interrogation. Defendant signed a waiver of those rights in close temporal proximity to the actual explanation of the warnings. The record shows the initial warnings, and defendant's signing of the *Miranda* waiver, took place over a period of approximately eight minutes, from 7:31 P.M. to 7:38 P.M. on 21 February 1991. The record is also clear that the taped questioning, and defendant's statement arising therefrom, commenced at 8:30 P.M., 21 February 1991.

Prior to the substantive portion of defendant's recorded statement, Detective White had the following tape-recorded colloquy with defendant:

Detective White: And did you understand all of those [*Miranda*] rights as I read them to you?

STATE v. FLOWERS

[121 N.C. App. 299 (1996)]

Defendant: Yes.

Detective White: And are you willing to answer questions and make a statement at this time, having these rights in mind?

Defendant: Yes.

The next morning, on 22 February 1991 at 10:02 A.M., defendant was presented with a transcription of her recorded statement. Defendant acknowledged the transcript, by affirming through signature the following annotation: "I, [defendant], have read the material contained herein and attest to the fact that it is my entire statement . . . ." The transcribed statement included the colloquy with Detective White above, explicitly referring to defendant's *Miranda* rights. Simply put, defendant was reminded at least twice of the rights she now claims to lack memory of.

"Many courts have considered the question whether *Miranda* warnings must be repeated at subsequent interrogations when they have been properly given at the initial one." *State v. McZorn*, 288 N.C. 417, 433, 219 S.E.2d 201, 212 (1975), *vacated in nonrelevant part*, 428 U.S. 904, 49 L.Ed.2d 1210 (1976). The *McZorn* Court answered this question, holding that *Miranda* warnings retain efficacy, so long as

no inordinate time elapses between interrogations, the subject matter of the questioning remains the same, and there is no evidence that in the interval between the two interrogations anything occurred to dilute the first warning . . . .

*McZorn*, 288 N.C. at 433, 219 S.E.2d at 212.

The trial court found and concluded defendant "was advised of her rights . . . at an appropriate time and in an appropriate manner . . . [and] [t]hat the rights of the defendant . . . were not violated by her detention, interrogation, or arrest[.]" This conclusion is well supported by the trial court's findings that the tape-recorded statements were made in "a clear manner generally," and were "thoughtful[]" and "responsive[] generally." From these circumstances, it cannot be said that "defendant was so intellectually deficient or emotionally unstable that [s]he had forgotten [her] constitutional rights that had been fully explained to [her] a short time earlier." *McZorn*, 288 N.C. at 435, 219 S.E.2d at 212. As such, the initial warnings given the instant defendant retained vitality throughout the questioning at issue here, *i.e.*, the warnings were not stale.

**[3]** Finally, defendant argues the trial court erred by limiting the testimony of her expert witness. The trial court refused to allow defendant's expert witness to testify on the substantive issue of defendant's capacity to waive her constitutional rights under *Miranda,* based on claims of PTSD and drug impairment. The trial court allowed the psychiatric testimony only to the extent necessary to corroborate defendant's testimony.

The North Carolina Supreme Court made clear in *State v. Daniels,* 337 N.C. 243, 263, 446 S.E.2d 298, 311 (1994), that a witness "may not testify as to whether the defendant had the capacity to waive [her] rights [under *Miranda*]." Just as the rule is clear, so is the result here. Defendant's brief argues the testimony of the "expert witnesses on PTSD and psychogenic shock . . . [was] for the purpose of showing that the defendant lacked the capacity to understandingly and voluntarily waive her rights and confess." Defendant's position ineluctably runs afoul of *Daniels,* and is without merit.

In summary, we conclude defendant had the capacity to waive her rights under Miranda; that such rights were properly explained to defendant by Detective White. We further hold that the *Miranda* warnings were not stale at the time of defendant's recorded statements, or at the time the transcript of the recordings was signed by defendant. As well, the testimony of the defendant's expert psychiatrist was properly limited by the trial court to corroborative purposes only.

No error.

Chief Judge ARNOLD and Judge GREENE concur.