An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-294

Filed 5 November 2025

Catawba County, No. 24SPC050411-170

IN THE MATTER OF: C.A.

Appeal by Respondent from order entered 15 August 2024 by Judge David W. Aycock in Catawba County District Court. Heard in the Court of Appeals 11 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Amanda M. Whitt-Downs, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for Respondent.*

GRIFFIN, Judge.

Respondent C.A. appeals from the trial court's order continuing her involuntary commitment in a medical facility for mental illness. Respondent contends the court violated her due process rights by involuntarily committing her without sufficient evidentiary support, and the court failed to make required findings

of facts in its commitment order. We hold the trial court received sufficient, competent evidence at Respondent's hearing to support involuntary commitment under N.C. Gen. Stat. § 122C-3(11)(a)(1), but the trial court's sole finding of fact is insufficient to support its ultimate finding that Respondent was a danger to herself. We vacate the trial court's order and remand.

## I. Factual and Procedural Background

On 14 July 2024, Respondent went to an emergency room in Onslow County and presented that she had been abused by her boyfriend. Medical personnel noted that Respondent had "racing thoughts" and "pressured speech," and was currently around eight weeks pregnant. Inspection of Respondent's medical history showed she had psychiatric concerns that were "fairly well treated" by anti-psychotic medication and treatments. Following an evaluation, the emergency room doctor submitted a petition for involuntary commitment against Respondent.

Respondent was then transferred to Frye Medical Center in Catawba County for continued evaluation. Dr. McKean, the evaluating doctor at Frye Medical Center, determined Respondent presented continuing mental health concerns, would be a danger to herself until available medication could take effect, needed additional time for medication to take effect, and lacked a safe alternative living arrangement.

On 18 July 2024, Respondent waived her right to a commitment hearing and consented to commitment for a term of seven days. Respondent thereafter consented to additional commitment terms totaling twenty-one days, running through 15

August 2024. On 15 August, the Catawba County district court held a hearing on Respondent's continued commitment. The trial court heard testimony from Dr. McKean and Respondent, as well as argument from counsel.

Immediately following the hearing, the trial court entered a written order involuntarily committing Respondent to a term of no more than fourteen days. Respondent timely appeals.[1]

## II. Analysis

Respondent argues the trial court "violated the right to due process" by involuntarily committing her when the State "did not prove by clear, cogent, and convincing evidence that she was dangerous to herself." Alternatively, Respondent contends we must reverse the trial court's commitment order because the court "failed to make findings demonstrating that the commitment was warranted."

Respondent frames her first argument as a constitutional due process issue, proposing this Court review the sufficiency of the evidence supporting her commitment de novo. *See Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated."). "It is uncontroverted that an involuntary commitment proceeding implicates the

---

[1] The commitment term from which Respondent appeals has expired, but her appeal is still ripe for our review because "[t]he possibility that [R]espondent's commitment in this case might likewise form the basis for a future commitment, along with other obvious collateral consequences, convinces us that this appeal is not moot." *In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633, 635 (1977).

deprivation of a liberty interest, triggering due process concerns." *In re J.R.*, 383 N.C. 273, 278, 881 S.E.2d 522, 525 (2022). However, constitutional rights are not implicated in an involuntary commitment determination absent a respondent's particular challenge to the processes employed by the court or participating counsel. Our Courts customarily do not treat the sufficiency of the evidence supporting an involuntary commitment as implicating a constitutional right. *In re C.G.*, 383 N.C. 224, 236, 881 S.E.2d 534, 544 (2022) (holding "no due process violation occurred in this case given that nothing about the manner in which the trial court conducted [the] respondent's involuntary commitment hearing tended to cast doubt upon the trial court's impartiality").

Rather, "upon review of a commitment order, we determine whether the ultimate findings concerning the respondent's mental illness and danger to herself are supported by the court's underlying findings, and whether those underlying findings, in turn, are supported by competent evidence." *In re D.H.*, 288 N.C. App. 311, 317, 886 S.E.2d 571, 575 (2023) (citation modified). We then assess de novo "whether the trial court's findings support its determination that the respondent should be involuntarily committed for additional inpatient treatment." *C.G.*, 383 N.C. at 236, 881 S.E.2d at 543 (citation omitted).

To order involuntary commitment of a respondent, the trial court must find that the respondent is both (1) mentally ill and (2) dangerous to herself or to others. N.C. Gen. Stat. § 122C-268(j) (2023). The court must find these facts based upon

clear, cogent, and convincing evidence and must actually make written findings of fact in its commitment order. *Id.* Chapter 122C of the North Carolina General Statutes defines "dangerous to self" to include, in relevant part, an individual who (1) cannot care for their own needs or express reasonable judgment without assistance, and (2) who will likely suffer future harm without immediate treatment:

> (11) Dangerous to self or others. --
>
>> a. Dangerous to self. -- Within the relevant past, the individual has done any of the following:
>>
>> 1. The individual has acted in such a way as to show all of the following:
>>
>> I. The individual would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of the individual's daily responsibilities and social relations, or to satisfy the individual's need for nourishment, personal or medical care, shelter, or self-protection and safety.
>>
>> II. There is a reasonable probability of the individual's suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself or herself.

N.C. Gen. Stat. § 122C-3(11)(a)(1) (2023).

Here, in its involuntary commitment order, the court made a single evidentiary finding that Respondent had a clinically diagnosed mental health condition and had

been administered medication, but that the medication had not had time to work as intended:

> Based on the evidence presented, the Court . . . by clear, cogent, and convincing evidence, finds these other facts:
>
> [F]acts supporting involuntary commitment: Respondent presented to this treatment facility exhibiting delusional behavior and she was diagnosed with schizo-affective disorder, bi-polar type. She has been placed on medications, but due to a pregnancy those have not yet reached therapeutic levels.

Each of Respondent's arguments assails the trial court's rulings regarding whether she was a danger to herself. Respondent makes no argument regarding the trial court's ultimate finding that she was mentally ill. Therefore, this ultimate finding is conclusive on appeal and this element of section 122C-268(j) is satisfied. *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) ("If no exceptions are taken to findings of fact, 'such findings are presumed to be supported by competent evidence and are binding on appeal.'" (citation omitted)).

The evidence presented in Respondent's involuntary commitment hearing on 15 August 2024 was sufficient to support an ultimate finding of dangerousness to self. Dr. McKean testified to Respondent's delusional behaviors stemming from diagnosed schizophrenia and the importance of proper medication for her mental and physical health. Dr. McKean explained that Respondent needed to remain hospitalized until her medication reached a therapeutic level so that dosage and effectiveness could be managed. Further, Dr. McKean informed the court Respondent lacked a safe housing

arrangement outside of the hospital, and that they had difficulty locating a placement for her because she was pregnant. This Court has previously upheld the trial court's commitment order where the court's findings of fact supporting dangerousness to self similarly detailed a respondent's mental health disorders, the dangers they posed to her health if not properly treated, and that she could not satisfy her need for shelter in her present condition. *See In re E.B. AAU/MPU Wards Granville Cnty.*, 287 N.C. App. 103, 109, 882 S.E.2d 379, 384 (2022).

Nonetheless, we agree with Respondent the trial court "failed to make findings demonstrating that the commitment was warranted," as required by section 122C-268(j). In *In re C.G.*, our Supreme Court reversed and remanded the trial court's order involuntarily committing a respondent where the court's findings of fact recited medical history and explicitly stated that the respondent was a danger to herself if not committed, but did not explain why her medical condition caused a risk of future harm. *C.G.*, 383 N.C. at 242, 881 S.E.2d at 547. Specifically, the Court in *C.G.* assessed the following evidentiary finding:

> [The r]espondent has a mental illness, that being schizoaffective disorder and has a long-standing history of mental illness which goes back to his late teens, he is 33 years old now. [The r]espondent suffers from hallucinations, disorganized thoughts, and is noncompliant with medications when not in the hospital. His active psychosis causes him to be a danger to himself and others. His ACT team initially had him committed as they were unable to see to his needs due to his decompensation. [The r]espondent is unable to sufficiently take care of his needs, that being dental and nourishment

> needs. [The r]espondent lives with a person who has anger issues and [the] respondent has been the victim of assaultive behavior and disturbing thoughts which cause deterioration and leaves him unable to perceive dangers to himself.

*Id.* at 241, 881 S.E.2d at 546–47 (cleaned up).

This finding of fact lengthily detailed the respondent's history of mental health and explicitly stated he was "a danger to himself and others," and unable to address his needs or perceive dangerousness due to mental health concerns—presumably addressing the first prong of the statutory test for dangerousness to self, an inability to care for one's own needs and exercise proper judgment. *Id.* Our Supreme Court nonetheless held it insufficient under sections 122C-268(j) and 122C-3(11)(a)(1) because it did not address the second prong, the likelihood of future harm. *Id.* at 242, 881 S.E.2d at 547. In reaching its holding, the Court in *C.G.* surveyed recent appellate precedent echoing the need for more particular findings of fact to support involuntary commitment under section 122C-268(j), and summarized "[t]he consistent theme in each of these decisions is that trial court's findings that an individual suffers from a mental illness, exhibits symptoms associated with that mental illness, and may not be able to take care of his or her needs are not sufficient to satisfy the second prong of the statutory test for the presence of a 'danger to self.'" *Id.* at 246, 881 S.E.2d at 549.

Here, the trial court's sole finding of fact likewise failed to explain how Respondent's mental health condition and delusions could cause her future harm

without commitment. The finding states only Respondent has a mental health condition and is receiving treatment to address symptoms. Further, while the finding in *C.G.* explicitly addressed the respondent's inability to care for himself and exercise judgment, the trial court's finding here also fails to address this first prong of the test for dangerousness to self with respect to Respondent. Because the trial court's finding addresses neither prong of section 122C-3(11)(a)(1), it is insufficient to support the trial court's ultimate finding that she was dangerous to herself.

The trial court's sole evidentiary finding of fact is insufficient to support its ultimate finding of fact Respondent was dangerous to herself if not involuntarily committed to inpatient treatment. Without this ultimate finding, the trial court's legal conclusion that involuntary commitment was warranted was also error. Considering the record evidence in this case alongside the error in the trial court's written order, we conclude the correct disposition in this case is to vacate the commitment order and remand the matter back to the trial court for additional findings of fact, if the trial court determines such findings are appropriate.

## III.    Conclusion

For the foregoing reasons, we vacate the trial court's commitment order and remand to the trial court.

VACATED AND REMANDED.

Judge HAMPSON and WOOD concur.

Report per Rule 30(e).