**STATE of Minnesota, Respondent,**

v.

**Neil Harris HJELMSTAD, Appellant.**

**No. CX–94–2655.**

Court of Appeals of Minnesota.

Aug. 8, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Coyne Rajkowski, St. Joseph City Atty., St. Cloud, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and NORTON, JJ.,

## OPINION

NORTON, Judge.

After the trial court denied his motion to suppress evidence, appellant Neil Hjelmstad waived his right to a jury trial and entered a conditional guilty plea pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn. 1980), based on police reports and the transcript from an Omnibus hearing. Hjelmstad contends that his conviction of gross misdemeanor driving under the influence should be vacated because it was the product of an illegal stop. We agree and reverse.

## FACTS

A police dispatcher advised Officer Bradley Meyer "to look out for" an intoxicated driver in an old green Chevy pickup with a topper and North Dakota license plates leaving the St. John's area headed east, possibly en route to St. Cloud. The dispatcher also informed Officer Meyer that the driver did not have a valid driver's license. The record does not contain evidence of how the dispatcher obtained this information. The dispatcher did not testify.

After receiving the report, Officer Meyer drove to County Road 75 and started driving westbound, looking for an eastbound truck matching the dispatcher's description. When he spotted the truck, he turned around and caught up to the truck as it was stopped in a northbound turn lane. As Officer Meyer turned into the left lane and pulled up behind the truck, he observed that the stop light was green with a left turn arrow. He noticed that the truck remained stopped at the green turn signal for approximately four seconds. The truck then turned north and went into a SuperAmerica parking lot.

Officer Meyer pulled up behind the truck as it pulled into a parking space, approached the driver as he stepped out of his truck, and asked him for his driver's license. The driver produced a non-driver's license from the State of North Dakota, identifying himself as Neil Harris Hjelmstad. When asked if he had a valid driver's license, Hjelmstad stated that he did not, that his driver's license had been suspended. Officer Meyer detected a strong odor of alcohol on Hjelmstad's breath. Officer Meyer requested Hjelmstad to perform field sobriety tests and a preliminary breath test, which Hjelmstad failed. Officer Meyer then placed Hjelmstad under arrest for driving under the influence (commonly referred to as DWI). Hjelmstad then failed an Intoxilyzer test at the county jail and was charged with gross misdemeanor DWI under Minn.Stat. § 169.121, subd. 3(c) (Supp.1993).

At an Omnibus hearing, Hjelmstad moved for dismissal of all of the charges on the basis that the evidence supporting his conviction was the fruit of an illegal stop. The trial court ruled that the stop was reasonable and denied the motion. Hjelmstad waived his right to a jury trial and entered a conditional guilty plea, preserving his right to appeal the trial court's decision regarding the stop.

## ISSUE

Did information from an anonymous informant, plus the officer's observation of appellant's driving, provide the officer with reasonable suspicion to justify stopping appellant?

## ANALYSIS

The facts in this case are set forth in the stipulated police report and Officer Meyer's testimony from the contested Omnibus hearing. Because the facts are established, the issue of whether the stop was valid is a question of law. *Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn. 1985).

 "It is well settled that in accordance with the Fourth Amendment of the United States Constitution a police officer may not stop a vehicle without a reasonable basis for doing so."[1] *Marben v. Department of Pub. Safety,* 294 N.W.2d 697, 699 (Minn. 1980) (citing *e.g. Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). A stop is lawful if the officer articulates a "particularized and objective basis for *suspecting* the particular persons stopped of criminal activity." *Berge,* 374 N.W.2d at 732 (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)) (emphasis in *Berge* ). The officer assesses the need for a stop on the basis of "all of the circumstances" and "draws inferences and makes deductions * * * that might well elude an untrained person." *Cor-*

---

1. The state does not contest the fact that Officer Meyer's confrontation with Hjelmstad constituted a fourth amendment stop/seizure. *Cf. State v. Day,* 461 N.W.2d 404, 406–07 (Minn.App.1990) ("seizure" occurred when officer parked to left of appellant's vehicle at gas pump and sum- moned appellant to approach him and respond to questioning), *pet. for rev. denied* (Minn. Dec. 20, 1990). Therefore, we do not address that issue, but instead assume a seizure occurred. The dispositive issue thus becomes whether the stop/seizure was reasonable.

*tez,* 449 U.S. at 418, 101 S.Ct. at 695, *quoted in Berge,* 374 N.W.2d at 732.

> [T]he factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person.

*Marben,* 294 N.W.2d at 699.

■ The state argues that *Marben* supports the trial court's decision that the stop of Hjelmstad was reasonable. In that case, the supreme court held that a trucker's CB radio communication with a trooper provided the trooper with "specific and articulable suspicion of a violation so as to warrant a stop of Marben's vehicle." *Id.* The court determined that the trucker's reference to the locations of the trooper's squad car and the vehicle in question enhanced the reliability of the trucker's information because "the trooper was able to verify that the trucker was in the area, and in close proximity to the subject car." *Id.* Based upon the trucker's claim of tailgating, the trooper had a proper basis for stopping Marben's vehicle for suspicion of a traffic violation. *Id.*

*Marben* is factually distinguishable from the case at bar. Unlike in *Marben,* the officer here did not speak personally with the informant. Further, there was no information here regarding the location of the informant or any other fact upon which one could have verified, before Officer Meyer stopped Hjelmstad, that the informant's knowledge was based upon anything else but a whim.

Hjelmstad contends that another case, in which the supreme court distinguished *Marben,* compels a conclusion that the information received from the anonymous informant here was not reliable, and renders the stop of Hjelmstad unreasonable. *See Olson v. Commissioner of Pub. Safety,* 371 N.W.2d 552, 556 (Minn.1985). We agree.

In *Olson,* two sheriff's deputies received a radio dispatch that "a citizen had called in reporting that he observed a—possibly a drunken driver." *Id.* at 553. The caller gave a description of the vehicle, along with the license number, and stated that the vehicle was westbound on Highway 55 from County Road 116. *Id.* The deputies spotted the car travelling eastbound on Highway 55.

They followed the car as it went through a parking lot and onto westbound 55. Even so, the deputies had noticed no erratic driving. *Id.*

Similar to this case, the dispatcher in *Olson* did not testify; the arresting officers' testimony constituted the only evidence regarding the anonymous telephone call. *Id.* at 555. The supreme court determined that the admissibility of the evidence uncovered in the course of the stop in *Olson* depended upon whether the dispatcher who relayed the message to the deputies "was in possession of specific and articulable facts supporting a reasonable suspicion that there was a drunk driver on the road." *Id.* The supreme court focused on the dispatcher's conversation with the informant, rather than the officer's corroboration of the information, and held that there were not "minimal specific and articulable facts" to support the anonymous caller's assertion of a "drunk driver on the road." *Id.* at 556.

In *City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 889 (Minn.1988), the supreme court explained its decision in *Olson:*

> [W]e distinguished [*Olson*] from *Marben* on the ground that nothing was known about the informant or about what led him to believe that the driver was "possibly" drunk. As we put it, for all that the officers knew, they were being asked to stop a car on "the whim of an anonymous caller."

(Quoting *Olson,* 371 N.W.2d at 556.) In *Shepherd,* as in *Olson,* a dispatcher relayed the informant's information to the arresting officer. *Id.* at 888. But the supreme court held that the stop was valid in *Shepherd* and distinguished *Olson* because, unlike in *Olson,* the telephone informant in *Shepherd* had given information as to his own identity and whereabouts. *Id.* at 888, 890. In addition, the caller in *Olson* reported a "possibly" drunken driver, whereas the caller in *Shepherd* unequivocally reported the driver's intoxicated state. *Id.* at 891. The court noted:

> This information suggested that the driver had been in the station and that the caller's information was based on personal observation of the driver himself, just as

the information relayed in *Marben* * * * had been based on personal observation. *Id.*

The trial court here stated:

While I'm not convinced that the four-second stop at the intersection is enough to make it a valid stop, I do think there is sufficient corroborating evidence with the information from dispatch that the officer had received based on the vehicle description and the North Dakota plates.

The trial court's analysis of the informant's corroborating evidence misses a fundamental point from which our analysis must start, that being the credibility of the informant. *Olson,* 371 N.W.2d at 556. Similar to *Olson,* the anonymous caller here gave a description of the car, its location, and the direction it was driving. But, also like *Olson,* the record here contains no evidence about the informant and what led him/her to believe Hjelmstad was intoxicated. Thus, as in *Olson,* this information does not form a sufficient basis for a stop.

The state argues that three facts distinguish this case from *Olson* and show the anonymous informant was credible here. First, the informant here did not make an equivocal statement regarding the driver's intoxication. *Cf. Olson,* 371 N.W.2d at 553 (caller described driver as "possibly" drunk). This distinction is of little significance. Whether the caller claimed the driver was "possibly drunk" or just "drunk" offers very little to demonstrate the caller's personal knowledge of Hjelmstad.

Second, the anonymous informant here provided the dispatcher with a *possible* destination. The state claims that this information is important because it shows that the caller was able to predict Hjelmstad's future behavior, a fact that could be verified by the police. *Cf. Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990) (caller's ability to predict individual's future behavior demonstrated inside information that the general public would not have known; "it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities"). But, unlike in *White,* the anonymous informant here did not provide details regarding Hjelmstad's future itinerary. *Cf. id.* at 327, 110 S.Ct. at 2414 (anonymous tip that defendant would be leaving a particular apartment at a particular time in a particular vehicle and would be going to a particular motel with cocaine in her possession). Instead, the caller here noted that the driver was "possibly" going to St. Cloud. While this indicates observation of Hjelmstad's truck heading in that direction, it does not demonstrate personal knowledge of Hjelmstad's driving privileges and his state of intoxication.

Third, the caller here stated that the driver did not have a valid driver's license. The state claims this information demonstrates the caller's personal knowledge of Hjelmstad. We disagree. It is curious that the caller did not provide the dispatcher with a name or description of the driver if he/she was so intimately familiar with the status of his driving privileges. The lack of more specific information about Hjelmstad and/or his itinerary leaves us to believe that, as in *Olson,* the officer was being asked to stop a car on "the mere whim of an anonymous caller." *Olson,* 371 N.W.2d at 556.

Finally, the state contends that Hjelmstad's four-second wait before turning left at the green left-turn signal corroborated the information received from the informant. To support this argument, the state notes that in *Shepherd,* the supreme court determined that the officer's observation of Shepherd's car stopped in the middle of a residential street for approximately two to four seconds "tended to provide minimal corroboration of the information given over the telephone." *Shepherd,* 420 N.W.2d at 888, 891 n. 2. The position of Hjelmstad's car, however, bears little resemblance to the situation in *Shepherd.* Hjelmstad was stopped at an intersection with stoplights, whereas the driver in *Shepherd* stopped "for no *apparent* reason" in the middle of a residential street. *Id.* at 891 n. 2. The four-second hesitation here, without more, does not demonstrate erratic driving and cannot be used to bolster a tip which otherwise bore no evidence of credibility to support the officer's stop of Hjelmstad.

In concluding that Officer Meyer did not have a reasonable basis to stop Hjelmstad upon suspicion of driving under the influence, we are directed by the supreme court's closing remarks in *Olson*, 371 N.W.2d at 556:

> The fourth amendment protection applies at the time the police intrusion is undertaken and is not to be judged by what the police learn after the intrusion. If the fourth amendment is to protect innocent drivers on the highway, it must afford that same protection to defendant Olson. It would have been a simple matter for the dispatcher to have elicited some minimal specific and articulable facts from the anonymous caller to support the caller's bare assertion of a possibly drunk driver on the road. This, however, was not done, or, if it was done, the state has failed to show that it was. The fourth amendment stands as a protection against unreasonable intrusions on an individual's privacy and personal security, and if this protection is to have any efficacy, it applies here.

### DECISION

The trial court erred when it determined that a police officer had probable cause for an investigative stop/seizure under the fourth amendment based upon an anonymous tip, received through the police dispatcher, that a drunken driver in a particular vehicle was possibly driving to St. Cloud, and based upon the officer's observation of a vehicle meeting that description.

**Reversed.**