STATE OF NORTH CAROLINA v. ELLEN MONICA ROBERSON

No. COA03-397

(Filed 2 March 2004)

**Search and Seizure— traffic stop—motion to suppress evidence—delayed reaction at traffic light**

The trial court did not err in a driving while under the influence case by allowing defendant's motion to suppress evidence obtained during a traffic stop, because: (1) defendant's eight-to-ten-second delayed reaction to a traffic light did not give rise to a

STATE v. ROBERSON

[163 N.C. App. 129 (2004)]

reasonable articulable suspicion that criminal activity may be afoot; (2) there was nothing suspicious about defendant's driving and thus no indication that she may have been under the influence of alcohol; (3) the fact that the officer's observation of defendant gave rise to no more than an unparticularized suspicion or hunch cannot be rehabilitated by adding the general statistics advocated by the State on time, location, and special events from which a law enforcement officer would draw his inferences based on his training and experience; and (4) the State failed to raise at trial the issue of the community caretaking function carried out by law enforcement.

Appeal by State from order filed 2 October 2002 by Judge Mark E. Klass in Guilford County Superior Court. Heard in the Court of Appeals 29 January 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Patricia A. Duffy, for the State.*

*Wyatt Early Harris Wheeler, LLP, by John Bryson, for defendant-appellee.*

BRYANT, Judge.

The State of North Carolina appeals an order filed 2 October 2002 allowing a motion by Ellen Monica Roberson (defendant) to suppress evidence obtained during a traffic stop.

In its 2 October 2002 order, the trial court found as fact that:

1.

On October 19, 2001, Deputy J. S. Eaton of the Guilford County Sheriff's Department was on routine patrol in Greensboro, North Carolina.

2.

Deputy Eaton . . . is experienced in the field of DWI detection, having received training in that area and also having been involved in more than 100 DWI arrests himself.

3.

At approximately 4:30 a.m. on October 19, 2001, Deputy Eaton was traveling southbound on High Point Road in

Greensboro, North Carolina when he approached the intersection of Holden Road, whereupon he stopped for a red traffic light. Defendant's vehicle was also stopped at this light; however, it was on the opposite side of the intersection traveling northbound on High Point Road. There were no other vehicles in the area.

4.

When the light turned green, Deputy Eaton proceeded through the intersection[;] however, he noticed defendant's vehicle remained stationary. As he passed defendant's vehicle, he observed defendant and could see that she was looking straight ahead. Deputy Eaton was unable to recall whether he observed her hands. As he proceeded down High Point Road, he could see that . . . defendant's vehicle remained stationary at the light[;] however, he could no longer make any observations about her person.

5.

After traveling approximately one city block, defendant's vehicle had still not moved. Deputy Eaton executed a U-turn and began to approach defendant's vehicle from the rear. As he approached defendant's vehicle, she lawfully proceeded through the intersection.

6.

Deputy Eaton then activated his blue light and effected a traffic stop of defendant's vehicle. Defendant was subsequently arrested and charged with the offense of driving while impaired.

7.

Deputy Eaton estimated the total time that defendant's vehicle had delayed before proceeding through the intersection at Holden Road upon the signal changing to green at ten seconds; however, he acknowledged that in previous testimony he had estimated the time at eight to ten seconds.

8.

On October 19, 2001, the furniture market was in session in High Point. Deputy Eaton testified that High Point Road was a major thoroughfare connecting Greensboro to High Point, and there were many bars and restaurants located in the immediate area where he stopped defendant. Deputy Eaton also expressed

his belief that the bars and restaurants were required to stop serving alcohol at 2:00 a.m.

9.

Deputy Eaton testified he had previously made other arrests for driving while impaired during other furniture markets. His observations of defendant on this evening led him to the opinion defendant may have been either impaired or suffering some medical difficulty.

Based on these findings, the trial court concluded the totality of circumstances did not give rise to a reasonable, articulable suspicion of criminal wrongdoing justifying a stop or seizure of defendant's person or vehicle. As a result, the trial court suppressed evidence obtained during the traffic stop.

---

The dispositive issue is whether defendant's eight-to-ten-second delayed reaction at a traffic light gave rise to a reasonable, articulable suspicion that criminal activity may be afoot.

Generally, an appellate court's review of a trial court's order on a motion to suppress "is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002). Where, however, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984). In this case, the State did not assign error to the trial court's findings. Accordingly, we review the trial court's order to determine only whether the findings of fact support the legal conclusion that the circumstances surrounding Deputy Eaton's stop of defendant did not give rise to a reasonable, articulable suspicion of criminal wrongdoing.

"[A] traffic stop based on an officer's [reasonable] *suspicion* that a traffic violation is being committed, but which can only be verified by stopping the vehicle, such as drunk driving or driving with a revoked license, is classified as an investigatory stop, also known as a *Terry* stop. Such an investigatory-type traffic stop is justified if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot."

*State v. Wilson,* 155 N.C. App. 89, 94-95, 574 S.E.2d 93, 98 (2002) (quoting *State v. Young,* 148 N.C. App. 462, 470-71, 559 S.E.2d 814, 820-21 (2002) (Greene, J., concurring) (distinguishing between traffic stop situations requiring the application of the probable cause versus the reasonable, articulable suspicion standard) (citations omitted)), *appeal dismissed and disc. review denied,* 356 N.C. 693, 579 S.E.2d 98 (2003). As our Supreme Court has held:

> "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' "

*State v. Steen,* 352 N.C. 227, 238-39, 536 S.E.2d 1, 8 (2000) (citations omitted).

The issue of whether a delayed reaction at a traffic signal can give rise to a reasonable, articulable suspicion that criminal activity may be afoot is one of first impression in this State but has been addressed in other jurisdictions. In *State v. Emory,* 119 Idaho 661, 809 P.2d 522 (1991), the Idaho Court of Appeals considered a delayed reaction at a traffic light for the purpose of arousing reasonable, articulable suspicion justifying a stop. The defendant in that case, who was alone in his vehicle, stopped at a red traffic light at 2:40 a.m. on a Sunday morning. A law enforcement officer on patrol duty was also waiting at the light. When the traffic light turned green, the defendant's vehicle did not move for five to six seconds. Thereafter, the officer observed the defendant drive away in a straight line but close to parked vehicles. Based on "the slowness of [the defendant's] response to the traffic signal[,] the closeness of [the defendant's] vehicle to other vehicles parked on the street[,] . . . the fact that it was 2:40 a.m. on a Sunday morning," and the officer's training "that forty percent of all people who have a slow response at a traffic signal may be under the influence of alcohol," the defendant was stopped. *Id.* at 663, 809 P.2d at 524. Evidence was subsequently obtained resulting in his arrest for driving while intoxicated. *Id.* In support of its holding that these factors were insufficient to give rise to a reasonable, articulable suspicion that the defendant was driving while intoxicated, the Idaho Court of Appeals stated:

> The evidence adduced by the officer could just as easily be explained as conduct falling within the broad range of what can

be described as normal driving behavior. "Of course, an officer may draw reasonable inferences from the facts in his possession, and those inferences may be informed by the officer's experience and law enforcement training." In this case, the officer relied upon his prior training which suggested that forty percent of all people who make a delayed response to a traffic signal are driving while under the influence of alcohol. However, such inferences must still be evaluated against the backdrop of everyday driving experience. It is self-evident that motorists often pause at a stop sign or traffic light when their attention is distracted or preoccupied by outside influences. Moreover, the fact that the stop occurred in the early morning hours does not enhance the suspicious nature of the observation.

*Id.* at 664, 809 P.2d at 525 (citation omitted).

Similarly, in *State v. Hjelmstad*, 535 N.W.2d 663 (Minn. App. 1995), the Minnesota Court of Appeals held that a four-second hesitation at a traffic light that had turned from red to green did not afford the responding law enforcement officer a reasonable basis to stop the defendant upon suspicion of driving while under the influence in the absence of any erratic driving. *Id.* at 666-67. In *State v. Cryan*, 320 N.J. Super. 325, 331-32, 727 A.2d 93, 97 (1999), the Appellate Division of the New Jersey Superior Court also rejected the State's contention that a five-second delay at a traffic light could give rise to a reasonable, articulable suspicion that an offense had been committed and noted that even the State in that case had conceded this point at the trial level.[1]

We agree with the rationale behind the above rulings. A motorist waiting at a traffic light can have her attention diverted for any number of reasons. Moreover, as there was no other vehicle behind defendant to redirect her attention to the green light through a quick honk of the horn, a time lapse of eight to ten seconds does not appear so unusual as to give rise to suspicion justifying a stop. When defendant did cross the intersection, there was nothing suspicious about her driving and thus no indication that she may have been under the influence of alcohol. Consequently, defendant's driving, including the delayed reaction at the traffic light, did not give rise to a reasonable, articulable suspicion that she was driving while under the influence. The fact that Officer Eaton's observation of defendant gave rise to no

---

1. At the suppression hearing in the case *sub judice*, defendant informed the trial court of the rulings in *Hjelmstad* and *Cryan*.

more than an " 'unparticularized suspicion or hunch,' " *Steen*, 352 N.C. at 239, 536 S.E.2d at 8 (citation omitted), cannot be rehabilitated by adding to the mix of considerations the general statistics advocated by the State on time, location, and special events from which a law enforcement officer would draw his inferences based on his training and experience,[2] *see, e.g., Emory*, 119 Idaho at 664, 809 P.2d at 525 ("[statistical] inferences must still be evaluated against the backdrop of everyday driving experience . . . [and the time of day of the stop] does not enhance the suspicious nature of the observation [of the delay]"). Defendant was stopped at 4:30 a.m. in an area that hosted several bars and restaurants; however, by law, those establishments were prohibited from serving alcohol after 2:00 a.m. Moreover, the furniture market's presence in town did not serve to increase the level of suspicion related to defendant's delayed reaction at the traffic light. We thus hold that under the totality of the circumstances in this case, there was no reasonable, articulable suspicion that defendant was driving while under the influence of alcohol when she was stopped. As such, the trial court properly granted the motion to suppress.

The State further contends the stop was proper under the community caretaking function carried out by law enforcement. Because the State did not raise this issue at the trial level, it is not properly before this Court. *See State v. Washington*, 134 N.C. App. 479, 485, 518 S.E.2d 14, 17 (1999) ("[t]he appellate courts will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal"). We also note that this alternative argument was rejected in *Cryan. See Cryan*, 320 N.J. Super. at 331, 727 A.2d at 96.

Affirmed.

Judges TIMMONS-GOODSON and ELMORE concur.

---

2. In its brief to this Court, the State also argues that statistics on slow responses to traffic signals, listed in a National Highway Traffic Safety Administration publication, lend objective credibility to Deputy Eaton's suspicion. As neither the publication nor testimony on it were introduced at the suppression hearing, we do not address this argument. *See also Emory*, 119 Idaho at 664, 809 P.2d at 525 (rejecting such statistical considerations based on the evidence in that case).