STATE OF NORTH CAROLINA
v.
FARAH MICHELLE AGHAEI
No. COA09-840.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General John W. Congleton, for the State.
James W. Carter, for defendant-appellant.
JACKSON, Judge.
Farah Michelle Aghaei ("defendant") appeals from her conviction for driving while impaired. For the reasons set forth below, we hold no error.
At trial, the State's evidence tended to show that, in the early morning hours of 1 November 2007, North Carolina State Highway Patrolman Steve Ziemba ("Trooper Ziemba") was assigned to assist with a checkpoint that was located at the intersection of Tenth Street and Fifth Street in Greenville, North Carolina. Trooper Ziemba was designated as a turn-around chase car; his task was to pursue vehicles that turned around at the checkpoint. At 2:59 a.m., one minute prior to the time the checkpoint was scheduled to shut down, Trooper Ziemba was outside of his patrol vehicle putting equipment in the truck because the patrolmen were starting to close down part of the checkpoint.
Trooper Ziemba's vehicle was parked in a parking lot of a restaurant on Fifth Street. At 2:59 a.m., while Trooper Ziemba was standing outside of his vehicle, he observed a red 1997 Nissan traveling southeast on Fifth Street toward the checkpoint. Approximately 180 feet before reaching the checkpoint, but in view of the blue lights at the checkpoint, the Nissan made a legal, left turn into the parking lot of an apartment complex located next to the parking lot in which Trooper Ziemba was standing. The checking station had no signs on Fifth Street, and Trooper Ziemba's vehicle's blue lights were off.
Trooper Ziemba then "walkedkind of jogged" to the apartment parking lot that the Nissan had entered, and he approached the vehicle at the driver's door. Trooper Ziemba identified defendant as the driver of the Nissan; three other females also were in the vehicle. Trooper Ziemba knocked on the driver's door and identified himself as a member of the State Highway Patrol. He asked whether defendant lived in the apartment complex, and defendant replied that she was bringing her friends to the complex. During the course of this exchange, Trooper Ziemba smelled a moderate to heavy odor of alcohol and large amount of perfume coming from the vehicle, and he asked defendant to step out of the vehicle, which she did.
At this point in the State's presentation of its evidence, defendant objected and moved to suppress Trooper Ziemba's testimony. On voir dire, Trooper Ziemba explained that he did not stop defendant, and, when asked whether defendant was free to go, Trooper Ziemba testified that she could have left if she walked around him on his left side. The trial court overruled defendant's objection and denied defendant's motion.
After voir dire, Trooper Ziemba testified that he had formed the opinion that defendant was appreciably impaired based upon his observing defendant's flushed face; red, glassy eyes; and positive results of the alcosensor test he had administered to her. Trooper Ziemba administered a chemical analysis using the Intoxilyzer 5000, which reported defendant's blood-alcohol concentration as .10 on each of the two tests. While being questioned at the detention center, defendant stated that she had drunk alcohol at a party that evening prior to her interaction with Trooper Ziemba.
On 23 January 2009, a jury convicted defendant of driving while impaired. The trial court entered judgment, imposing a Level Five punishment and sentencing defendant to a term of sixty days imprisonment, which was suspended, and defendant was placed on twenty-four months unsupervised probation. Defendant appeals.
On appeal, defendant contends that the trial court erred by denying her motion to suppress evidence obtained as a result of a purportedly unconstitutional search and seizure. We disagree.
"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [the trial court's] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." State v. Allison, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002) (citing State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court's conclusions of law are reviewed de novo. State v. Haislip, 362 N.C. 499, 500, 666 S.E.2d 757, 758 (2008) (citation omitted).
With respect to defendant's first argument on appeal, we note that defendant does not assign error to any of the trial court's findings of fact. When the trial court's findings of fact "are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." State v. Roberson, 163 N.C. App. 129, 132, 592 S.E.2d 733, 73536 (citing State v. Baker, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984)), disc. rev. denied, 358 N.C. 240, 594 S.E.2d 199 (2004). Instead, defendant argues that the State failed to prove that Trooper Ziemba's stop, search, and seizure of defendant was constitutionally permissible and that the trial court erred in concluding "that there was no stop of defendant's vehicle."
In State v. Corpening, ___ N.C. App. ___, 683 S.E.2d 457 (2009), a case which is materially indistinguishable from the case sub judice, we explained that because the defendant stopped of his own volition, rather than pursuant to state action, our usual analysis regarding traffic stops was inapplicable. See id. at ___, 683 S.E.2d at 459. Instead, "we inquire[d] only whether the officers legitimately approached defendant's vehicle, which was parked beside the curb on a public street, and whether the officers developed the probable cause necessary to effectuate a constitutionally permissible search and seizure of defendant's person or property." See id. (citing U.S. Const. amend. IV; N.C. Const. art. I, § 20; State v. Rivens, ___ N.C. App. ___, ___, 679 S.E.2d 145, 149 (2009) (citing State v. Rigsbee, 285 N.C. 708, 713, 208 S.E.2d 656, 660 (1974) and State v. Yates, 162 N.C. App. 118, 589 S.E.2d 902 (2004))).
We further explained that
[i]t is well established that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

State v. Johnston, 115 N.C. App. 711, 714, 446 S.E.2d 135, 13738 (1994) (quoting Florida v. Royer, 460 U.S. 491, 49798, 75 L. Ed. 2d 229, 236 (1983) (plurality opinion) (citations omitted)). Furthermore, "`a seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" Id. (quoting Florida v. Bostick, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991)). "`Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment.'" Id. (quoting State v. Thomas, 81 N.C. App. 200, 205, 343 S.E.2d 588, 591, disc. rev. denied, 318 N.C. 287, 347 S.E.2d 469 (1986) (citation omitted)).
See id. at ___, 683 S.E.2d at 45960. See also State v. Brooks, 337 N.C. 132, 14142, 446 S.E.2d 579, 58586 (1994) (a police officer's knocking on the window of parked car without further display of force or authority is not a stop pursuant to the Fourth Amendment). Cf. State v. Icard, 363 N.C. 303, 30809, 677 S.E.2d 822, 82627 (2009) (reiterating that a police officer may approach someone in a public place without invoking constitutional protections and emphasizing that a totality of the circumstances test must be employed to determine whether and, if so, when a consensual encounter becomes a seizure within the meaning of the Fourth Amendment to the United States Constitution).
In the case sub judice, the uncontroverted evidence is that, at 2:59 a.m., defendant made a legal turn into the apartment complex approximately 180 feet short of the checkpoint and stopped her car of her own volition to drop off her friends. See Corpening, ___ N.C. App. at ___, 683 S.E.2d at 459 (no stop for purposes of constitutional analysis when the defendant stopped on his own approximately 100 to 200 feet short of a traffic checkpoint on a public road). As in Corpening, we cannot say that the police effected a stop of defendant's vehicle. Trooper Ziemba was standing outside of his patrol vehicle in a restaurant parking lot, the entrance to which was approximately thirty feet from the driveway to the apartment complex. Trooper Ziemba approached defendant's vehicle on foot, knocked on the door, identified himself as a member of the State Highway Patrol, and inquired whether defendant lived in the apartment complex. Defendant replied that she did not, but that she was dropping her friends off at the complex. The evidence shows that, at this point, Trooper Ziemba had made no further display of force or authority. In view of the totality of the circumstances, we hold that no "stop" occurred and that the exchange between Trooper Ziemba and defendant was constitutionally permissible. See Icard, 363 N.C. at 30809, 677 S.E.2d at 82627; Brooks, 337 N.C. at 14142, 446 S.E.2d at 58586; Corpening, ___ N.C. App. at ___, 683 S.E.2d at 45960.
Furthermore, Trooper Ziemba testified that, during the course of this constitutionally permissible exchange, he smelled a moderate to heavy odor of alcohol, at which point he asked defendant to step out of the vehicle. See, e.g., Corpening, ___ N.C. App. at ___, 683 S.E.2d at 460 (noting the well-established plain-smell exception to the warrant requirement set forth in the Fourth Amendment of the United States Constitution) (citations omitted). Based upon his observations of defendant's appearance and after administering several sobriety tests, Trooper Ziemba formed the opinion that defendant was appreciably impaired and arrested her. Accordingly, we hold that the interaction between Trooper Ziemba and defendant and her subsequent arrest all were allowed in view of well-established constitutional precedent.
Next, defendant argues that the trial court erred in making findings of fact and conclusions of law that defendant's vehicle was in the perimeter of the checkpoint and that Trooper Ziemba was required to have a reasonable, articulable suspicion to justify the stop of defendant's vehicle. We already have explained that, in the case sub judice, defendant stopped of her own volition at her friends' apartment complex approximately 180 feet prior to the checkpoint, and, therefore, no "stop" occurred as a result of state action with respect to the checkpoint for purposes of constitutional analysis. Furthermore, we also have explained that Trooper Ziemba did not violate defendant's constitutional rights merely by approaching her vehicle to ask her whether she lived at the apartment complex. Accordingly, because no "stop" was effectuated within the meaning of the Fourth Amendment of the United States Constitution or within the meaning of Article I, section 20 of the North Carolina Constitution, we need not address this argument.
For the foregoing reasons, we hold no error.
No Error.
Judges HUNTER, Jr., Robert N. and ERVIN concur.
Report per Rule 30(e).