**STATE v. OSTERHOUDT**

[222 N.C. App. 620 (2012)]

---

STATE OF NORTH CAROLINA v. DONALD OSTERHOUDT, Defendant

No. COA11-1428

(Filed 21 August 2012)

## 1. Appeal and Error—DWI pretrial indication—appeal directly from superior to appellate court

The State correctly conceded that it did not have a statutory right of appeal to the Court of Appeals from a superior court order entered pursuant to N.C.G.S. § 20-38.7 (after a district court's pretrial indication that granted defendant's motion to suppress in a DWI prosecution). Although the State argued that the superior court order was final because it included language "suppressing" the evidence, the order specifically stated that the basis for the hearing was the State's appeal of the district court indication, which meant that a remand to district court for final action was required. The order was therefore interlocutory; however, the State's petition for *certiorari* was granted.

## 2. Motor Vehicles—crossing halfway point in street—turn lane

There was competent evidence in a DWI suppression hearing to support the superior court's finding of fact that defendant's car did not cross the halfway point on a street in a DWI prosecution that involved a street with a turn lane (a total of three lanes). A Highway Patrol Trooper testified on direct examination that half of defendant's car went over the double-yellow line, which corresponded with the superior court's finding. Additionally, it would have been reasonable for the superior court to assume that the double-yellow line on a three-lane street would not be close enough to the middle of the street that the two lanes on one side and the one on the other would have the same total width.

**3. Motor Vehicles—cross double-yellow line—statutory violations**

The trial court erred by concluding that a DWI defendant did not violate any traffic laws in crossing a double-yellow line where defendant made a wide turn and went over the double-yellow line on a street with three lanes (two regular lanes and a turn lane). Defendant did not violate N.C.G.S. § 20-146(a) because. that statute does not apply to highways divided into three marked lanes; however, defendant violated N.C.G.S. § 20-146(d)(3-4) by not obeying a traffic control device (the double-yellow line) and N.C.G.S. § 20-146(d)(1) by not staying in his lane.

**4. Search and Seizure—traffic stop—normal driving— articulable suspicion**

The trial court erred when considering a DWI stop by not looking beyond whether defendant's driving was normal in order to determine whether the trooper had reasonable, articulable suspicion for stopping defendant. The relevant inquiry is whether the officer had specific and articulable facts, as well as rational inferences from those facts, that a person was involved in criminal activity.

**5. Search and Seizure—traffic stop—reasonable articulable suspicion—mistaken statute**

The trial court erred by finding that a Trooper did not have a reasonable, articulable suspicion for stopping a DWI defendant where the Trooper saw defendant cross a double-yellow line but was mistaken about the statute violated. Defendant's driving violated other statutes and the Trooper's testimony established objective criteria justifying the stop.

Appeal by the State from order entered 14 March 2011 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 23 May 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*Matthew J. Davenport for defendant-appellant.*

*The Avery, P.C., by Isaac T. Avery, III, Raleigh, on behalf of the North Carolina Conference of District Attorneys, amicus curiae.*

*Tiffanie W. Sneed, Chapel Hill, on behalf of the North Carolina Association of Police Attorneys, amicus curiae.*

*Edmond W. Caldwell, Jr. and Julie B. Smith, Raleigh, on behalf of the North Carolina Sheriffs' Association, amicus curiae.*

HUNTER, Robert C., Judge.

The State appeals from a 14 March 2011 order entered by Judge W. Russell Duke, Jr. in Pitt County Superior Court affirming the district court's pretrial indication that granted defendant Donald Osterhoudt's ("defendant's") motion to suppress the stop of defendant ("motion to suppress").[1] The State asserts the following errors on appeal: (1) the superior court's finding of fact that defendant's car "never crossed over the middle halfway point of Fifth Street[]" was not supported by the evidence; (2) the superior court's conclusion of law that it is permissible for a vehicle to cross the double yellow line as long as it does not cross the "centerpoint of the roadway" is erroneous as a matter of law; (3) the superior court applied an incorrect test to determine whether defendant's traffic stop was permissible under the Fourth Amendment and, thus, erred in its conclusion of law that the police officer's observations did not constitute reasonable articulable suspicion; and (4) the superior court's conclusion of law that the stop of defendant was unreasonable was erroneous. After careful review, we reverse and remand.

## Background

The evidence tended to establish the following: On 14 January 2010 at approximately 1:10 a.m., North Carolina State Highway Patrol Trooper Nathaniel Monroe ("Trooper Monroe") was on-duty and stopped at a stoplight on Fifth Street in Greenville, N.C. Trooper Monroe was traveling east on Fifth Street and observed defendant make a "wide right turn" onto Fifth Street whereby half of defendant's car went over the double yellow line into the turning lane for traffic coming in the opposite direction. Fifth Street is a three-lane road with two lanes for westbound traffic (consisting of a regular lane and a left hand turn lane) and one lane for eastbound traffic. Trooper Monroe turned on his blue lights and stopped defendant. Defendant pulled

---

1. We note that the phrase "motion to suppress the stop" was used by defendant, and the record shows that the actual name of defendant's motion was "Motion to Suppress Stop Pursuant to N.C.G.S. § 20-38.6." However, for clarity, we refer to it as a motion to suppress the evidence obtained as a result of the stop.

over on Fifth Street but only pulled his car halfway into a parking spot. Trooper Monroe charged defendant with and arrested defendant for driving while impaired ("DWI") pursuant to N.C. Gen. Stat. § 20-138.1 (2009).[2]

On 12 November 2010, defendant filed a motion to suppress in district court pursuant to N.C. Gen. Stat. § 20-38.6 (2010). After a pretrial hearing on 17 November 2010, the district court issued its pretrial indication and included the following pertinent conclusions of law:

3. That it is not a violation of the N.C. General Statutes for a vehicle to cross a double yellow line separating a turn lane from a straight travel lane at an intersection while making a right turn so long as such movement is made in safety and no traffic is affected;

4. That [Trooper Monroe's] observations do not constitute a reasonable articulable suspicion that any crime has occurred or is occurring;

5. The stop of the vehicle which the [d]efendant was operating was unreasonable.

The district court ordered all evidence obtained as a result of the stop suppressed. The State gave oral notice of its appeal to superior court pursuant to N.C. Gen. Stat. § 20-38.7 (2010) and filed its notice of appeal on 30 November 2010.

On 3 December 2010, the superior court held a hearing on the State's appeal of the district court's pretrial indication. After taking the matter under advisement, the superior court made the following findings of fact in its 14 March 2011 order, *nunc pro tunc* to 3 December 2010:

8. That [defendant's car], during the turn, veered over the double yellow line to the extent that approximately half of the car was over the line before coming back into its eastbound lane of travel;

9. That, although the car cross [sic] the yellow lines . . . the car never crossed over the middle halfway point of Fifth Street[.]

Based on its findings of fact, the superior court issued the following pertinent conclusions of law:

---

2. Defendant was also charged with violating N.C. Gen. Stat. § 20-146(a) for failing to stay within the right half of the road.

3. That it is not a violation of the General Statutes for a vehicle to cross the double yellow line separating the turn lane from the straight lane at this particular intersection while making a right turn so long as the vehicle does not cross the centerpoint of the roadway, and such turn is made in safety and no traffic is affected;

4. That this driving falls within a normal pattern of driving behavior, and the Trooper's observations do not constitute a reasonable articulable suspicion that any crime has occurred or is occurring;

5. The stop of the vehicle which the [d]efendant was operating was unreasonable.

The superior court affirmed the district court's pretrial indication and ordered "all evidence obtained as a result of the stop and detention of [d]efendant" suppressed.

On 21 March 2011, the State filed its notice of appeal to this Court.

## Discussion

### I.  Grounds for Appellate Review

[1] Initially, the Court must determine whether this appeal is properly before it. The State "concedes that, ordinarily, it has no statutory right of appeal from a superior court order entered pursuant to N.C.G.S. § 20-38.7(a)." However, because the superior court failed to remand the matter back to the district court to enter a final order and it included language specifically ordering a suppression of all the evidence obtained as a result of the stop, the State asserts it is, in effect, a final order that gives the State a statutory right of appeal pursuant to N.C. Gen. Stat. §§ 15A-979(c) and 15A-1445(b). However, if we find the State has no statutory right of appeal, the State requests this Court grant its petition for writ of *certiorari* and review the merits of its appeal.

We note that the State is correct in its concession that it has no statutory right of appeal from a superior court order entered pursuant to N.C. Gen. Stat. § 20-38.7. *See State v. Fowler*, 197 N.C. App. 1, 7, 676 S.E.2d 523, 532 (2009), *disc. review denied and appeal dismissed*, 364 N.C. 129, 696 S.E.2d 695 (2010); *State v. Palmer*, 197 N.C. App. 201, 203, 676 S.E.2d 559, 561 (2009), *disc. review denied*, 363 N.C. 810, 692 S.E.2d 394 (2010). Pursuant to N.C. Gen. Stat. § 20-38.6 (2011), after a defendant moves to suppress evidence in district court prior to trial, the district court "shall set forth in writing the findings

of fact and conclusions of law and preliminarily indicate whether the motion should be granted or denied." If the district court indicates that a defendant's motion to suppress should be granted, "the judge shall not enter a final judgment on the motion until after the State has appealed to superior court [pursuant to N.C. Gen. Stat. § 20-38.7] or has indicated it does not intend to appeal." N.C. Gen. Stat. § 20-38.6(f). This Court has held that a superior court order issued pursuant to N.C. Gen. Stat. § 20-38.7 is interlocutory even though it "may have the same 'effect' of a final order but requires further action for finality." *Fowler*, 197 N.C. App. at 6, 676 S.E.2d at 531. Pursuant to N.C. Gen. Stat. § 20-38.7, once the superior court reviews the district court's pretrial indication *de novo*, the superior court must "enter an order remanding the matter to the district court with instructions to finally grant or deny the defendant's pretrial motion[.]" *Id.* at 11, 676 S.E.2d at 535.

Here, while acknowledging the fact that it may not appeal a superior court order issued pursuant to N.C. Gen. Stat. § 20-38.7, the State attempts to side step this procedural bar by arguing that the superior court order is no longer interlocutory, as designated in *Fowler*, 197 N.C. App. at 6, 676 S.E.2d at 531, but constitutes a final order giving the State a right of appeal through N.C. Gen. Stat. §§ 15A-1445 and 15A-979. We are not persuaded.

Pursuant to N.C. Gen. Stat. §§ 15A-1445 and 15A-979 (2011), the State has a right of appeal to this Court if the superior court grants a defendant's motion to suppress. *See State v. Barnhill*, 166 N.C. App. 228, 230, 601 S.E.2d 215, 217, *appeal dismissed*, 359 N.C. 191, 607 S.E.2d 646 (2004) (noting that pursuant to N.C. Gen. Stat. § 15A-979(c), "[t]he State has the right to appeal [to this Court] an order by the superior court granting a motion to suppress prior to trial"). Thus, the State is arguing that since the superior court order included language in it specifically "suppressing" the evidence, the superior court was granting defendant's motion to suppress; therefore, the State has a statutory right of appeal pursuant to N.C. Gen. Stat. §§ 15A-1445 and 15A-979. However, in the present case, the superior court order specifically states that the basis for the 3 December 2010 hearing is the State's appeal of the district court's pretrial indication granting defendant's motion to suppress. Therefore, although the superior court order does not fully comply with *Fowler* and *Palmer*, this does not change the nature of the order from interlocutory to final. Accordingly, because the State has no statutory right of appeal, we must grant defendant's motion to dismiss.

However, as the State requests, this Court may grant a writ of *certiorari* "when no right of appeal from an interlocutory order exists." N.C.R. App. P. 21(a)(1) (2012). The State argues this Court should grant *certiorari* for two reasons. First, the State contends that the superior court exceeded its jurisdiction by: (1) failing to remand the matter back to the district court with instructions to enter a final order granting or denying the motion to suppress in violation of N.C. Gen. Stat. § 20-38.7(a), and (2) failing to "give[] effect" to *Fowler* and *Palmer*. Second, the State alleges that review is "vitally important because of the manifest errors of law committed by the superior court and the very real potential for those errors to be repeated in Pitt County and elsewhere." In support of its petition for *certiorari*, the State cites *Fowler* and *Palmer* where we granted *certiorari* to address issues pertaining to the appeal of a district court's pretrial indication. *Fowler*, 197 N.C. App. at 8, 676 S.E.2d at 533 (granting the State's petition for *certiorari* after the superior court found N.C. Gen. Stat. §§ 20-38.6 and 38.7 unconstitutional); *Palmer*, 197 N.C. App. at 204, 676 S.E.2d at 561 (allowing *certiorari* based on the superior court's finding that the State lacked jurisdiction in appealing the district court's pretrial indication).

Having determined that the State has no right of appeal from the superior court's interlocutory order and recognizing that this Court has granted *certiorari* in similar circumstances, we exercise our discretion to grant the State's petition for writ of *certiorari*.

## II. Standard of Review

On appeal, we will apply the same standard of review we would use as if the superior court order was a final order even though it was entered pursuant to N.C. Gen. Stat. § 20-38.7. Our review of a superior court's order granting a motion to suppress is limited to "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Any unchallenged findings of fact are "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735–36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). " '[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting

*State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001)).

### III. Finding of Fact No. 9

[2] First, we address the State's argument that the superior court's finding of fact that defendant's car "never crossed over the middle halfway point of Fifth Street" was not supported by competent evidence. In support of its argument, the State claims that although Trooper Monroe testified that defendant's vehicle was "about halfway into the turning lane[,]" he did not definitively establish that defendant's car was "no more than halfway" into the turning lane. Furthermore, the State contends that because there was no testimony establishing the total width of Fifth Street nor the width of the individual traffic lanes, "there was no way of determining by competent evidence that crossing the double yellow lines did not constitute crossing the 'middle halfway point of Fifth Street.' " In other words, the State seems to argue that there is a possibility that the double yellow line was located near enough to the center of Fifth Street that a portion of defendant's car may have crossed the "middle halfway point" of the road. We disagree.

While the State is correct that on cross-examination, Trooper Monroe did testify that defendant's car was "about halfway" into the turning lane, he stated in direct examination that "[h]alf of [defendant's] vehicle went over the double yellow line[.]" Since Trooper Monroe's initial statement is unequivocal and corresponds with the superior court's finding of fact, the State's argument is without merit.

Additionally, although the State is correct in its assertion that no testimony was offered to conclusively establish where the double yellow line was in relation to the middle point of the road, it was reasonable for the superior court to assume that the double yellow line on a three-lane road, as Fifth Street is, would not be close enough to the middle of the road whereby the two lanes on one side and the one lane on the other side would essentially have the same total width. Thus, the superior court's finding of fact that "[defendant's] car did not cross over the middle halfway point of Fifth Street" was supported by the court's rational assumption. Therefore, because we find that there was competent evidence to support the superior court's finding of fact, the State's argument is overruled. Since the State did not challenge any other findings of fact, the remaining findings are deemed competent and are binding on appeal. *See Roberson*, 163 N.C. App. at 132, 592 S.E.2d at 735–36.

IV. Conclusion of Law No. 3

**[3]**  Next, the State argues that the superior court erred in its conclusion of law that crossing a double yellow line separating the turning lane from a motorist's lane of traffic at this particular intersection is not a violation of law if: (1) the motorist "does not cross the centerpoint of the roadway"; (2) the turn is "made in safety"; and (3) "no traffic is affected[.]" Specifically, the State contends that the superior court's conclusion is not supported by law or evidence and that defendant's act of driving over the "centerpoint" of the road violates N.C. Gen. Stat. §§ 20-146 and 20-153. We agree that defendant violated N.C. Gen. Stat. §§ 20-146(d) and 20-153, but we do not find a violation of N.C. Gen. Stat. § 20-146(a).

The State argues on appeal, as it did at the superior court hearing, that defendant violated N.C. Gen. Stat. § 20-146(a) which requires drivers to drive on the "right half of the highway[.]" In fact, defendant was charged with violating this statute. However, N.C. Gen. Stat. § 20-146(a) contains several exceptions. Specifically, the statute does not apply to "highway[s] divided into three marked lanes for traffic[.]" N.C. Gen. Stat. § 20-146(a)(3). Here, Fifth Street is a three-lane road; therefore, N.C. Gen. Stat. § 20-146(a) and its requirement that drivers stay on the right half of the road would not apply. Therefore, we find the State's assertion that defendant violated this statute is without merit.[3]

In contrast, we do find defendant violated N.C. Gen. Stat. §§ 20-146(d) and 20-153. Pursuant to N.C. Gen. Stat. § 20-146(d), on streets that are two or more lanes and clearly marked:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

. . .

(3) Official traffic-control devices may be erected directing specified traffic to use a designated lane or designating those lanes to

---

3. We note that the superior court seems to base its conclusion of law that defendant did not violate any traffic law because he did not cross the "centerpoint" of the road on a misapplication of this statute to the facts of this case. Since we have found that N.C. Gen. Stat. § 20-146(a) does not apply to the facts here, whether defendant crossed the "centerpoint" of Fifth Street is irrelevant, and we do not address the State's assertions on this point.

be used by traffic moving in a particular direction regardless of the center of the street and drivers of vehicles shall obey the direction of every such device.

(4) Official traffic-control devices may be installed prohibiting the changing of lanes on sections of streets, and drivers of vehicles shall obey the directions of every such device.

As for a definition for "traffic-control devices," N.C. Gen. Stat. § 136-30 (2011) requires any traffic-control devices to comply with the Manual on Uniform Traffic-Control Devices for Streets and Highways ("the Manual") published by the United States Department of Transportation; therefore, we look to the Manual to find a definition of a traffic-control device. According to the Manual, a traffic control device is "a sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, private road open to public travel, pedestrian facility, or shared-use path by authority of a public agency or official having jurisdiction[.]" Manual on Uniform Traffic-Control Devices for Streets and Highways § 1A.13 (2009 ed.). Therefore, the double yellow line at issue in this case is a "marking" used to guide traffic and, thus, a traffic-control device.

When defendant crossed the double yellow line on Fifth Street, he failed to stay in his lane and violated N.C. Gen. Stat. § 20-146(d)(1). Additionally, defendant failed to obey the double yellow line marker and, therefore, violated N.C. Gen. Stat. § 20-146(d)(3-4). Thus, we find that defendant violated § 20-146(d)(1), (3-4).

Pursuant to N.C. Gen. Stat. § 20-153(a) (2011), "a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." At the superior court hearing, Trooper Monroe testified that there was nothing in the roadway that would cause defendant to make a wide turn to avoid hitting something. Thus, as the State asserts and we agree, there was no practical reason why defendant would need to veer over the double yellow line. Therefore, we find defendant also violated N.C. Gen. Stat. § 20-153 by failing to stay close to the right-hand curb when making the turn onto Fifth Street.

Because we find that defendant violated N.C. Gen. Stat. §§ 20-146(d) and 20-153, we hold that the superior court's conclusion of law no. 3 does not reflect a correct interpretation of applicable legal principles. Furthermore, we note that the superior court's conclusion that defendant did not violate the law because he did not cross the "centerpoint" of the road, he made the turn safely, and no traffic was

affected is not an accurate reflection of our traffic laws. Therefore, we hold that the superior court erred in concluding defendant did not violate any traffic laws in crossing the double yellow line.

## V. Test to Determine Whether the Traffic Stop was Valid Under the Fourth Amendment

**[4]** Next, the State argues that the superior court erred by considering in its analysis whether defendant's driving fell within a normal driving pattern when determining if the stop was valid under the Fourth Amendment. Specifically, the State alleges that the superior court's analysis has the potential to make our traffic laws unenforceable since it is normal for people to violate them and warns that a formal adoption of this analysis would necessitate the need for expert witness testimony in all traffic cases. Finally, the State contends that the superior court erred by "overlook[ing] or discount[ing]" other objective factors that established reasonable articulable suspicion because it only focused on whether defendant's driving was normal. We agree.

While we acknowledge that this Court has classified a defendant's driving as normal when looking at the totality of the circumstances, that classification has never been the only objective factor we have examined to determine whether a police officer has reasonable articulable suspicion. *See State v. Peele*, 196 N.C. App. 668, 674, 675 S.E.2d 682, 687 (2009) (noting that "a tip with no indicia of reliability, no corroboration, and conduct falling within the broad range of what can be described as normal driving behavior" was not enough to establish reasonable articulable suspicion to stop the defendant (internal quotations omitted)). The relevant inquiry for determining the constitutionality of an investigatory stop under the Fourth Amendment is whether the police officer had "specific and articulable facts, as well as the rational inferences from those facts" that a person is involved in criminal activity but not, as the superior court seems to indicate, how "normal" his or her driving is. *State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994). Here, since the superior court fails to look beyond whether defendant's driving was normal in order to determine whether Trooper Monroe had reasonable articulable suspicion, the court erred.

## VI. Conclusions of Law Nos. 4 and 5

**[5]** Finally, the State argues that the superior court erred in its conclusions of law that Trooper Monroe did not have reasonable articulable suspicion to stop defendant and that the stop was unreasonable.

Specifically, the State asserts that because Trooper Monroe observed defendant violate several traffic statutes when defendant crossed the double yellow line, he was justified in stopping defendant. We agree that Trooper Monroe had reasonable articulable suspicion to stop defendant based on the observed traffic violations notwithstanding his mistaken belief that defendant had violated N.C. Gen. Stat. § 20-146(a) and that the stop was reasonable under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (internal quotation marks omitted). The stop must be based on a "minimal level of objective justification, something more than an unparticularized suspicion or hunch." *Id.* at 442, 446 S.E.2d at 70 (internal quotation marks and citation omitted). Our Supreme Court has held that "reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). However, "an officer's determination regarding potential criminal activity must be objectively reasonable, and an officer's mistaken belief that a defendant has committed a traffic violation is not an objectively reasonable justification for a traffic stop." *State v. Heien*, ____ N.C. App. ____, ____, 714 S.E.2d 827, 828-29 (2011), *writ of supersedeas allowed and disc. review granted*, ____ N.C. ____, 720 S.E.2d 389 (2012). This Court has held that "an officer's subjective motivation for stopping a vehicle is irrelevant as to whether there are other objective criteria justifying the stop." *State v. Baublitz*, 172 N.C. App. 801, 807, 616 S.E.2d 615, 620 (2005) (internal quotation marks omitted); *see also State v. McLamb*, 186 N.C. App. 124, 127, 649 S.E.2d 902, 904 (2007) (holding that "[w]hether the legal justification for [a police officer's] traffic stop was subjectively reasonable is irrelevant").

Here, Trooper Monroe testified that he initiated the stop of defendant after he observed "half of [defendant's] vehicle" go over the double yellow line when defendant turned right onto Fifth Street. Even though he charged defendant with "driving left of center" and issued defendant a ticket for violating N.C. Gen. Stat. § 20-146(a) for failing to keep his "vehicle on the right half of the highway," Trooper Monroe did not testify that he stopped defendant for violating N.C. Gen. Stat. § 20-146(a) but based for defendant's crossing the double yellow line.

Since we have held that defendant did not violate N.C. Gen. Stat. § 20-146(a) because Fifth Street is a three-lane road, the issue becomes whether there is objective criteria to justify stopping defendant other than Trooper Monroe's mistaken belief that defendant violated N.C. Gen. Stat. § 20-146(a) when he crossed the double yellow line. To decide this issue, we must determine whether Trooper Monroe's proffered justification for stopping defendant is sufficient to establish an objectively reasonable basis for the stop.

Trooper Monroe's testimony that he initiated the stop of defendant after observing defendant drive over the double yellow line is sufficient to establish a violation of: (1) N.C. Gen. Stat. § 20-146(d)(3-4) since we concluded that crossing the double yellow line constitutes a failure to obey traffic-control devices; (2) N.C. Gen. Stat. § 20-146(d)(1) because by crossing the double yellow line, defendant failed to stay in his lane; and (3) N.C. Gen. Stat. § 20-153 as defendant failed to stay close to the right-hand curb of Fifth Street when he veered over the double yellow line. Therefore, regardless of his subjective belief that defendant violated N.C. Gen. Stat. § 20-146(a), Trooper Monroe's testimony establishes objective criteria justifying the stop. Consequently, the stop of defendant was reasonable, and the superior court erred in holding otherwise.

We note that because Trooper Monroe's reason for stopping defendant was not based solely on his mistaken belief that defendant violated N.C. Gen. Stat. § 20-146(a) but because defendant crossed the double yellow line, we find the present case distinguishable from other cases where our Court has held that an officer's mistaken belief a defendant has committed a traffic violation is not objectively reasonable and, thus, violates a defendant's Fourth Amendment rights. *See Heien*, ____ N.C. App. at ____, 714 S.E.2d at 831; *McLamb*, 186 N.C. App. at 127, 649 S.E.2d at 904; *State v. Burke*, ____ N.C. App. ____, ____, 712 S.E.2d 704, 707 (2011), *aff'd per curiam*, ____ N.C. ____, 720 S.E.2d 388 (2012).

Accordingly, we remand and reverse the superior court's order affirming the district court's pretrial indication. On remand, the superior court must remand the matter back down to the district court with instructions to enter a final order denying defendant's motion to suppress in accordance with this opinion.

## Conclusion

Based on our holding that defendant's driving violated N.C. Gen. Stat. §§ 20-146(d) and 20-153 and Trooper Monroe's reason for initiat-

ing the stop was objectively reasonable, we find that the superior court erred in affirming the district court's pretrial indication. We, therefore, reverse and remand the superior court's order affirming the district court's pretrial indication. On remand, the superior court must remand the matter back down to the district court with instructions to enter a final order denying defendant's motion to suppress in accordance with this opinion.

Reversed and Remanded.

Judges GEER and BEASLEY concur.