**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4104**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

  v.

DAVID JOE GARCIA,

       Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, Chief District Judge. (1:18-cr-00142-MR-WCM-1)

Argued: March 10, 2021               Decided: April 9, 2021

Before NIEMEYER, MOTZ and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a stop and search of his vehicle, David Garcia was arrested for possessing firearms as a convicted felon. Garcia entered a conditional guilty plea but reserved the right to appeal the district court's ruling on the legality of the stop and search. We affirm.

I.

The Government elicited the following facts at the suppression hearing before a magistrate judge. Between 1:00 and 2:00 a.m. on July 23, 2018, Sgt. Jordan Warren sat in a marked patrol car in a parking lot on Asheville Highway in Henderson County, North Carolina. At an intersection down the street from his post, Sgt. Warren saw a white Nissan driven by Garcia pause at a stop sign for "three to four seconds," which seemed unusual to Sgt. Warren because the road had no other traffic. The officer started following the vehicle and concluded that Garcia was taking a circuitous route back to Asheville Highway to avoid the police. While tailing the vehicle, Sgt. Warren ran its license tag, which showed the vehicle was registered to Garcia's mother and had "several indicators [of] narcotics, felon and drugs" associated with it.

Sgt. Warren observed Garcia's vehicle cross a double-yellow traffic line into the lane of oncoming traffic. North Carolina law requires drivers to remain on the right half of the highway. N.C. Gen. Stat. § 20-146. The officer initiated a traffic stop and explained to Garcia why he had been pulled over. Garcia told Sgt. Warren that he went into the opposite lane of travel to avoid what he saw as a dip in the road that might have blown his

2

suspensions or rims. Garcia also explained that he was on the way to help a friend who feared harassment from an ex-boyfriend.

Sgt. Warren then asked Garcia for his driver's license; Garcia could not produce one. Sgt. Warren contacted dispatch and learned that Garcia had a revoked driver's license and an outstanding arrest warrant for failure to appear for a prior charge of driving with a revoked license. The officer then placed Garcia under arrest.

As Sgt. Warren arrested Garcia, he noticed that Garcia wore a vest under his sweatshirt. While Garcia described this as a paintball vest, the officer testified that it resembled a tactical vest and could serve as body armor to "prevent . . . a stab or to soften a blow from a blunt type object." Sgt. Warren also found a large knife on Garcia's body and two sets of brass knuckles in his back pants pocket. North Carolina law criminalizes carrying concealed weapons including metallic knuckles. N.C. Gen. Stat. § 14-269(a). After handcuffing Garcia, Sgt. Warren placed him in the back of his patrol car.

Sgt. Warren and another officer who had arrived on the scene then searched the white Nissan. The officers found a black pistol in a holster near the dashboard and a shotgun in the trunk. They also found a magazine loaded with ammunition, a mask, a Smith and Wesson baton, a hatchet and gloves.

A grand jury indicted Garcia, who had previously been convicted of a felony, on one count of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearms, initially arguing only that the stop violated the Fourth Amendment. Following a hearing on the motion to suppress and supplemental briefing on the lawfulness of the search of Garcia's vehicle, a magistrate judge issued a

3

recommendation that the district court deny Garcia's motion to suppress. The district court overruled Garcia's objections and adopted the magistrate's recommendation. Garcia entered a conditional guilty plea, reserving the right to appeal. The district court sentenced Garcia to 21 months' imprisonment.

We review "the factual findings underlying a district court's ruling on a motion to suppress for clear error and its legal conclusions de novo." *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013). We consider the evidence in "the light most favorable to the government," the party that prevailed in the district court. *United States v. Abdallah*, 911 F.3d 201, 209 (4th Cir. 2018) (internal quotation marks omitted).

Garcia challenges both the initial stop and the subsequent search of his vehicle. We consider each in turn.

II.

Garcia first argues that the stop of his vehicle constituted an unlawful seizure in violation of the Fourth Amendment. The "[t]emporary detention of individuals during the stop of an automobile by the police . . . constitutes a 'seizure'" subject to the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. Thus, if Sgt. Warren had a "reasonable ground for belief" that Garcia committed a traffic

4

violation, even a minor one, he lawfully initiated the traffic stop. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

North Carolina law directs that "[u]pon all highways of sufficient width a vehicle shall be driven upon the right half of the highway." N.C. Gen. Stat. § 20-146(a). But the statute provides for an exception "[w]hen an obstruction exists making it necessary to drive to the left of the center of the highway." *Id.* § 20-146(a)(2). Sgt. Warren pulled Garcia over after he observed Garcia cross over the double yellow line. According to Garcia, he swerved to avoid an asphalt pavement patch, which constituted an "obstruction" permitting him to lawfully drive into the other lane.

The magistrate judge found that the temporary patch in the road was not an "obstruction" justifying Garcia's swerve, and so Sgt. Warren had reasonable suspicion to stop Garcia. The Government offered ample evidence to support that finding. At the suppression hearing, Greg Connor, a Henderson County Maintenance Supervisor, characterized the asphalt as a "smoothing patch" with "just a little bit of rise" and testified that it would do "nothing to endanger moving traffic." He explained that the patch appeared smaller than a speedbump and that he did not consider it an "obstruction on the roadway." Connor further testified that he had initially patched the road because he found a "depression" in the road and wanted to ensure it remained safe. Connor testified that he had not received any complaints about the patch since it had been placed earlier that month. Moreover, Sgt. Warren testified that as he followed Garcia, he drove over the patch with no issue, suggesting that no obstruction justified Garcia's swerve.

5

Given all of this evidence, Sgt. Warren certainly had reasonable suspicion that Garcia had violated N.C. Gen. Stat. § 20-146(a). *See, e.g., State v. Baublitz, Jr.*, 616 S.E.2d 615, 620 (N.C. 2005) (denying motion to suppress when officer made an "objective observation of defendant's vehicle twice crossing the center line," which "provided [him] with probable cause for the stop"); *State v. Osterhoudt*, 731 S.E.2d 454, 460 (N.C. 2012) (holding the defendant violated the N.C. statute by "cross[ing] the double yellow line" when "there was no practical reason why defendant would need to veer over the double yellow line").[1] Accordingly, the stop did not violate the Fourth Amendment.

## III.

Garcia alternatively maintains that even if the stop was lawful, the officers' subsequent search of his vehicle violated the Fourth Amendment because they lacked probable cause to do so.[2] The automobile exception to the warrant requirement permits police officers to search an automobile if it is "readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per

---

[1] The cases Garcia relies on to support his contrary view do not apply. In defining obstruction, Garcia points to cases interpreting an entirely separate statute concerning the maintenance of public thoroughfares. *See Cooper v. Town of S. Pines*, 293 S.E.2d 235 (N.C. 1982); *Beckles-Palomares v. Logan*, 688 S.E.2d 758 (N.C. 2010). Moreover, a patch of asphalt constitutes neither "shrubbery" obstructing motorists' view, *Cooper*, 293 S.E.2d at 237, nor "vegetation" blocking an intersection, *Beckles-Palomares*, 688 S.E.2d at 764.

[2] Garcia also argues that the search of his vehicle did not fall under the search-incident-to-arrest doctrine, which permits searches "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). Because this case meets the higher probable cause standard, we need not address the search-incident-to-arrest argument.

curiam) (citing *California v. Carney*, 471 U.S. 386, 393 (1985)). Probable cause requires "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Once "police have probable cause, they may search 'every part of the vehicle and its contents that may conceal the object of the search.'" *United States v. Kelly*, 592 F.3d 586, 590 (4th Cir. 2010) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

The Government satisfied the probable cause standard. Probable cause exists when a police officer finds contraband on a vehicle's recent occupant, and here, Sgt. Warren found on Garcia a large knife and two sets of brass knuckles. *See United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013). Garcia also wore a tactical vest that could be used as body armor. Garcia told Sgt. Warren he was on his way to help a friend who faced harassment from an ex-boyfriend, suggesting he faced a potential confrontation. And Garcia's circuitous route indicated that he sought to avoid Sgt. Warren's patrol car. Based on the totality of the circumstances, an objectively reasonable officer could have concluded that the automobile contained additional contraband, providing the officers with probable cause to search it.

Garcia, however, argues that this evidence did not provide the officers with probable cause to search for additional evidence of the crimes the officers knew of before the search — driving without a license and possessing concealed brass knuckles. That argument also fails. The automobile exception "permits police officers to search a vehicle for evidence of *any* crime, not just the crime of arrest." *Baker*, 719 F.3d at 319 (emphasis added). The

officers had probable cause to do so here.  Accordingly, the search did not violate the Fourth Amendment.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.